**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

IRENE ZAMD,

Plaintiff,

v.

VERTEX PHARMACEUTICALS INCORPORATED,

Defendant.

Civil Action No. 1:17-CV-11219-LTS

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant Vertex Pharmaceuticals Incorporated ("Vertex" or "Defendant"), by and through its attorneys, hereby submits this Answer to Plaintiff Irene Zamd's ("Plaintiff") Complaint as follows, and to the extent that Defendant does not respond to a specific averment, it is hereby denied:

PARTIES

**COMPLAINT ¶1**

The plaintiff, Irene Zamd, is a citizen of Massachusetts and a resident of Marlborough, Middlesex County, Massachusetts.

**ANSWER**

Defendant lacks sufficient knowledge or information to admit or deny the statements set forth in Paragraph 1 of the Complaint.

**COMPLAINT ¶2**

The defendant, Vertex Pharmaceuticals, Inc., is a for-profit Massachusetts corporation, with a principal place of business in Boston, Suffolk County, Massachusetts.

**ANSWER**

Defendant admits the statements set forth in Paragraph 2 of the Complaint.

JURISDICTION AND VENUE

**COMPLAINT ¶3**

This action arises under 42 U.S.C. §12101, *et seq.*

**ANSWER**

Defendant admits that Plaintiff has filed this action under 42 U.S.C. § 12101, *et seq.*

**COMPLAINT ¶4**

Federal question jurisdiction is invoked pursuant to 28 U.S.C. §1331.

**ANSWER**

Defendant admits that the Court has jurisdiction over this matter because Plaintiff asserts claims under 42 U.S.C. § 12101, *et seq.*

**COMPLAINT ¶5**

Venue is proper pursuant to 28 U.S.C. §1391(b), as the events giving rise to these claims occurred in the District.

**ANSWER**

Defendant admits that venue is proper.

**COMPLAINT ¶6**

The plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The plaintiff received a right-to-sue letter from the EEOC dated April 11, 2017.

**ANSWER**

Defendant admits the allegations set forth in Paragraph 6 of the Complaint.

CLAIMS

**COMPLAINT ¶7**

In June 2010, Ms. Zamd began working as a Lead Quality Assurance Auditor/Specialist in Vertex's Quality Compliance Management ("QCM") Good Clinical Practice division. Her

primary role was to perform audits of clinical trials. In December 2011, Vertex promoted Ms. Zamd to Quality Lead in her division.

**ANSWER**

Defendant admits that Plaintiff was hired in June 2010 as a Lead Quality Assurance Auditor/Specialist ("Auditor") in Defendant's Quality Compliance Management Good Clinical Practice Division ("QCMGCP Division"). Defendant further admits that Plaintiff's primary role was to perform audits of clinical trials. Defendant denies that Plaintiff was ever promoted during her employment with Defendant.

**COMPLAINT ¶8**

In her role at Vertex, Ms. Zamd was responsible for carrying out Good Clinical Practice ("GCP") audits of pharmaceutical studies, vendors, processes, documents and other functions to assure compliance with internal protocols, and applicable federal and state regulations, and in foreign countries to assure and verify compliance with applicable laws and regulations.

**ANSWER**

Defendant admits that in her Auditor role, Plaintiff was primarily responsible for the development, implementation and maintenance of quality control initiatives, which involved conducting audits of pharmaceutical studies, vendors, processes, and documents, as well as other functions necessary to ensure Defendant's continued compliance with internal protocols and governmental regulations. Defendant also avers that in her role, Plaintiff was periodically required to travel abroad to audit clinic trials being conducted in foreign jurisdictions. Defendant denies the allegations in Paragraph 8 that are inconsistent with the foregoing.

**COMPLAINT ¶9**

Prior to her employment with Vertex, Ms. Zamd had worked in the pharmaceutical field in quality assurance, conducting GCP audits, for more than twenty years.

**ANSWER**

Defendant lacks sufficient information or knowledge to admit or deny the statements set forth in Paragraph 9.

**COMPLAINT ¶10**

During the course of her employment with Vertex, through her abrupt dismissal on May 22, 2013, Ms. Zamd performed her duties faithfully and diligently, consistently receiving among the highest performance ratings, including her 2011 and 2012 annual evaluations, which rated her as "Leading," which is the best possible rating.

**ANSWER**

Defendant admits that Plaintiff received the rating of "Leading" on her 2011 and 2012 annual Performance Evaluations. Defendant denies the remaining allegations set forth in Paragraph 10.

**COMPLAINT ¶11**

Among the positive comments in Ms. Zamd's 2011 performance evaluation was that "Irene has exceeded expectations during regulatory inspections at the investigator sites by being on the road for a month straight to ensure inspection went well ... feedback from the sites and internally was positive about her professionalism and work ethic" and "Her colleagues and external clients enjoy working with her due to her candor and forthrightness."

**ANSWER**

Defendant admits that in her 2011 annual Performance Evaluation, one of a number of comments includes reference to Plaintiff's performance during regulatory inspections. Defendant denies that Plaintiff's 2011 annual Performance Evaluation includes the quote, "Her colleagues and external clients enjoy working with her due to her candor and forthrightness."

**COMPLAINT ¶12**

In her last performance evaluation, which was completed in December 2012, (five months before Vertex terminated her), Ms. Zamd received the highest performance rating available. From the time of this performance review until her termination, Ms. Zamd received no criticism of her job performance.

**ANSWER**

Defendant admits that in December 2012, Plaintiff's then manager, Deborah Waltz, who had only been employed by Defendant for a few months at the time of the 2012 Performance Evaluation, and therefore had not worked for a full year with Plaintiff, rated Plaintiff's performance as "Leading." Defendant further admits that despite only having worked with Plaintiff for a few months, Ms. Waltz's comments in the 2012 Performance Evaluation identified areas of improvement for Plaintiff. Defendant denies the remaining allegations in Paragraph 12.

**COMPLAINT ¶13**

From in or around 1989, Ms. Zamd has suffered from a medical condition known as Multiple Chemical Sensitivity, which causes her to be hyper sensitive to scented products. Doctors believe that her condition is the result of a five centimeter cyst above and behind her left eye that presses on the olfactory nerve. When she is exposed to most products containing fragrances, her condition causes symptoms that include severe headaches/migraines, nausea, numbness on one side of her face and neck, metallic taste, respiratory difficulties and other symptoms

**ANSWER**

Defendant lacks sufficient information or knowledge to admit or deny the statements set forth in Paragraph 13.

**COMPLAINT ¶14**

Ms. Zamd's condition is a physical impairment and, when she is exposed to scented products, substantially limits her major life activities including, but not limited to her ability to perform certain tasks, such as reading, processing information and concentrating.

**ANSWER**

Defendant lacks sufficient information or knowledge to admit or deny the statements set forth in Paragraph 14.

**COMPLAINT ¶15**

When Ms. Zamd began her job at Vertex in 2010, she informed her then-supervisor, Martin Caron, Associate Director of Quality Partnership Management, of her disability.

**ANSWER**

Defendant admits that in or around September 2010, Plaintiff's then supervisor, Martin Caron, informed Defendant's Human Resources that Plaintiff had become agitated during a meeting because she perceived that two employees were wearing scented products. Defendant denies the allegations set forth in Paragraph 15 that are inconsistent with the foregoing.

**COMPLAINT ¶16**

In 2010, Ms. Zamd requested her colleagues to minimize or refrain from wearing scented products. Ms. Zamd's colleagues generally cooperated, and so Ms. Zamd did not experience substantial difficulties working in the Vertex office. Periodically, when her symptoms flared, she would work from home. At the time, Mr. Caron permitted his staff to work from home on occasion.

**ANSWER**

Defendant admits that during a meeting with Human Resources regarding her scent sensitivity in September 2010, Plaintiff stated that she did not require any accommodation from Defendant and that she would continue to ask her colleagues to refrain from wearing scented products on an as needed basis. Defendant lacks sufficient information or knowledge to admit or deny what Plaintiff said to her colleagues about her scent sensitivity after this meeting, how those particular colleagues responded, or Plaintiff's subjective experience working in the Vertex office in 2010. Defendant is unable to admit or deny Plaintiff's statements regarding Mr. Caron's practice of permitting employees to work from home or how often Plaintiff worked from home under Mr. Caron's supervision insofar as "periodically" and "on occasion" are vague and ambiguous terms. Defendant denies the remaining allegations in Paragraph 16.

**COMPLAINT ¶17**

As part of her role in the Quality Partnership Management division, Ms. Zamd's job duties included traveling to locations where clinical trials were being conducted, typically hospitals and doctors' offices, to perform audits, which involved interviewing the health care professionals directing and conducting trials, and reviewing the records of those trials.

**ANSWER**

Defendant admits the allegations set forth in Paragraph 17.

**COMPLAINT ¶18**

By 2013, Ms. Zamd had been conducting off-site audits for Vertex successfully for more than two years, and before that for more than twenty years as an employee of other pharmaceutical companies. In her experience, hospitals and doctor's offices usually do not permit fragrances, and therefore, working in such locations seldom exacerbated her disability. Ms. Zamd was able to make arrangements with the people with whom she had to work at these audit locations by requesting them to minimize or refrain from using fragrances that would trigger her symptoms. Similarly, when she had to attend audits at remote locations requiring air travel, she was generally able to make arrangement with members of airline flight crews to change seats in the rare situations when she encountered fragrances that triggered her symptoms that were not somehow obviated by the constant circulation of cabin air. In events when she could not obtain such accommodations, she suffered the consequences of her disability.

**ANSWER**

Defendant is unable to admit or deny Plaintiff's allegation that "By 2013, [Plaintiff] had been conducting off-site audits for Vertex successfully for more than two years . . ." insofar as "successfully" is a vague and ambiguous term. Defendant lacks sufficient knowledge or information to admit or deny all remaining allegations in this paragraph.

**COMPLAINT ¶19**

In the summer of 2012, Vertex hired Deborah Waltz as the Senior Director of QCM. In that role, Ms. Waltz became Ms. Zamd's immediate supervisor.

**ANSWER**

Defendant admits that in or around August 2012 Deborah Waltz became the new Senior Director of the QCMGCP Division and Plaintiff's immediate supervisor. Defendant denies the allegations set forth in this paragraph that are inconsistent with the foregoing.

**COMPLAINT ¶20**

By late 2012/early 2013, most of Ms. Zamd's original colleagues had left Vertex for one reason or another, and some of the newer employees wore scented products that exacerbated Ms. Zamd's disability. When the plaintiff requested that she do so, Ms. Waltz refused to send out a

notice asking Ms. Zamd's colleagues to refrain from wearing scented products. (Ms. Zamd did personally ask her coworkers to minimize or simply not to wear scented products.)

**ANSWER**

Defendant is unable to admit or deny the first sentence of this Paragraph as it vague and ambiguous and relies entirely on Plaintiff's subjective experience. Defendant denies that Ms. Waltz refused to ask the employees of the QCMGCP Division and surrounding offices to refrain from wearing scented products. Defendant lacks sufficient information or knowledge to admit or deny what Plaintiff may have said to her colleagues regarding her scent sensitivity. Defendant avers that numerous of Plaintiff's colleagues complained about the manner in which Plaintiff confronted them about her perception of scented products being worn. Defendant denies that Plaintiff's putative sensitivity to scent constituted a disability.

**COMPLAINT ¶21**

Some of her coworkers complied with Ms. Zamd's request, although not always, and the presence of some or all of those scents aroused the plaintiff's symptoms, as described above.

**ANSWER**

Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 21.

**COMPLAINT ¶22**

In mid-February 2013, Ms. Zamd requested a reasonable accommodation for her fragrance sensitivity disability. Initially, she did so by speaking with Robert Castellucci, Vertex's Vice President of Quality, explaining her sensitivity to fragrances, the symptoms she suffered when exposed to certain scents, and she asked him to provide an accommodation. Specifically, she requested that Vertex permit her to work remotely from home on a part-time basis, which would have minimized the cumulative effects caused by her exposure to scented products.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 22.

**COMPLAINT ¶23**

Mr. Castellucci denied her request for accommodation, despite the fact that other employees within Ms. Zamd's department who did not have disabilities had been permitted to work from home for appreciable periods of time, including one who was allowed to work from her home in Canada every other week. Mr. Castellucci did offer to send out a notice to the general employee population informing them of Ms. Zamd's sensitivity to scents, but he never did so.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 23.

**COMPLAINT ¶24**

Shortly thereafter, Ms. Zamd spoke with her immediate supervisor and manager, Ms. Waltz, who referred Ms. Zamd to Vertex's Human Resources Department (hereafter, "HR").

**ANSWER**

Defendant denies the allegations set forth in Paragraph 24.

**COMPLAINT ¶25**

Following her conversation with Ms. Waltz, Ms. Zamd communicated with Katie Solt, in HR, verbally and via e-mail.

**ANSWER**

Defendant admits that on or around February 20, 2013, Plaintiff communicated with Katie Solt, Human Resources Partner, and for the first time requested that she be permitted to work from home full-time as an accommodation of her scent sensitivity. Defendant further avers that in response to Plaintiff's statements, Ms. Solt initiated Defendant's accommodation process. Defendant denies the allegations that are inconsistent with the foregoing.

**COMPLAINT ¶26**

On or about February 20, 2013, Jane Martiny, in HR, requested medical documentation substantiating Ms. Zamd's disability and her need for accommodation.

**ANSWER**

Defendant admits that on February 20, 2013, Jane Martiny, Senior Benefits Specialist, emailed Plaintiff a letter informing her of her rights under the Americans with Disabilities Act ("ADA") and seeking additional information, including medical documentation, from Plaintiff regarding her scent sensitivity concerns. Defendant further admits that Plaintiff responded that she did not understand why she had to "go through this 'disability' exercise." Defendant denies the allegations that are inconsistent with the foregoing.

**COMPLAINT ¶27**

Also on February 20, 2013, Ms. Zamd's supervisor, Deborah Waltz, emailed Katie Solt, in HR, and reported that she was concerned that Ms. Zamd's fragrance disability would prevent her from conducting audits. Ms. Solt instructed Ms. Waltz not to change any of Ms. Zamd's audit duties.

**ANSWER**

Defendant admits that on February 20, 2013, Ms. Waltz emailed Ms. Solt to inquire whether Plaintiff would be able to travel to Ireland on an upcoming audit given her scent sensitivity. Defendant further admits that Ms. Solt informed Ms. Waltz that she should not make any changes to Plaintiff's duties based on the scent sensitivity until medical information was obtained. Defendant denies the allegations that are inconsistent with the foregoing.

**COMPLAINT ¶28**

Ms. Waltz's alleged concern about Ms. Zamd's ability to carry out her assignments was not based on fact, and was intended to obstruct the plaintiff's employment. Notably, Ms. Zamd's request for accommodation concerned her Vertex office environment only.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 28.

**COMPLAINT ¶29**

In her reasonable accommodation request, Ms. Zamd did not seek to limit the time she spent conducting off-site audits, nor did she seek any accommodation with respect to off-site audits, because she was exposed to scented products infrequently when performing audits.

**ANSWER**

Defendant admits that Plaintiff did not explicitly request to limit time spent conducting off-site audits in her February 20, 2013 request to work from home as an accommodation of her scent sensitivity. Defendant lacks sufficient knowledge or information to admit or deny the allegation regarding Plaintiff's experience at off-site audits.

**COMPLAINT ¶30**

Ms. Zamd submitted a letter dated March 13, 2013 from her treating physician, Michelle Goh, M.D., which described her medical condition, its etiology and symptoms. Dr. Goh requested that Ms. Zamd be permitted to work from home several days per week so that Ms. Zamd would not be continuously exposed to scented products.

**ANSWER**

Defendant admits that in a letter dated March 13, 2013, Plaintiff's treating physician, Michelle Goh, M.D., described Plaintiff's medical condition, its etiology, and symptoms. Defendant further avers that Dr. Goh noted, " . . . it may help [Plaintiff] to work from home even if only for a few days a week where she has control over her environment and won't be continuously exposed [to scents]." Defendant denies the allegations that are inconsistent with the foregoing.

**COMPLAINT ¶31**

As early as September 2010, Ms. Zamd had informed Vertex that working in a separate office would not effectively address her medical condition. Yet, in response to her request for accommodation, Vertex suggested that Ms. Zamd work out of a separate office. This proposal was not a reasonable accommodation, because it failed to address Dr. Goh's recommendation that Ms. Zamd not be continuously subjected to scents. Even with her own office, Ms. Zamd would still encounter scents on a daily basis in common areas such as hallways, restrooms, conference rooms and break rooms.

**ANSWER**

Defendant admits that Plaintiff informed Defendant in September 2010 that working in a separate office with filtered air would not help her scent sensitivity. Defendant is unable to admit or deny the remaining allegations set forth in this Paragraph as the allegations lack sufficient detail and clarity to permit response. To the extent any understandable allegation can be inferred from Paragraph 31, Defendant denies that working from a separate office was the only accommodation offered Plaintiff after Defendant received the March 13, 2013 letter from Dr. Goh.

**COMPLAINT ¶32**

On April 1, 2013, three weeks after Ms. Zamd submitted her doctor's note, Ms. Waltz informed Ms. Zamd that HR had denied her request to work from home. In this conversation, Ms. Waltz also stated that because of Vertex's inability to control Ms. Zamd's environment when working off-site, Vertex would no longer permit Ms. Zamd to perform off-site audits.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 32.

**COMPLAINT ¶33**

At the time of her conversation with Ms. Waltz, Ms. Zamd had been scheduled to perform an audit in Ireland. Ms. Waltz reassigned this audit to another employee.

**ANSWER**

Defendant is unable to admit or deny the allegation set forth in Paragraph 33 as it lacks sufficient specificity. Defendant denies that it removed any audit or function from Plaintiff on the basis of her scent sensitivity or request for accommodation.

**COMPLAINT ¶34**

Ms. Waltz's instruction that Ms. Zamd could no longer perform audits was irrelevant to Ms. Zamd's request for accommodation, failed to address her accommodation request, and failed to address Ms. Zamd's disability for the reasons stated above. Vertex's limitation on Ms. Zamd's assignments was intended to, and did, interfere with Ms. Zamd's employment with the company.

Further, Vertex limited Ms. Zamd's assignments on the basis of an unsupported perception that Ms. Zamd's disability prevented her from performing her job duties.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 34.

**COMPLAINT ¶35**

Despite having submitted a doctor's note in support of her reasonable accommodation on March 13, 2013, by April 1, 2013, HR had not conducted an interview or consultation with Ms. Zamd regarding her reasonable accommodation request.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 35.

**COMPLAINT ¶36**

Following Ms. Waltz' instructions described in Par. 32, above, Ms. Zamd complained to HR that Ms. Waltz was discriminating against her for requesting accommodation by eliminating her audit duties. She requested a meeting with HR to discuss the matter.

**ANSWER**

Defendant admits that on May 20, 2013, Plaintiff emailed Ms. Solt to request a meeting to discuss alleged discrimination. Defendant further avers that Ms. Solt met with Plaintiff that same day. Defendant denies the allegations set forth in Paragraph 36 that are inconsistent with the foregoing.

**COMPLAINT ¶37**

During the first week of April 2013, Ms. Zamd met with Amanda Tramontozzi and Jane Martiny, in HR, to discuss her concerns about Ms. Waltz's actions. Ms. Tramantozzi told Ms. Zamd that despite what Ms. Waltz may have stated, Vertex HR had not yet made any determination regarding Ms. Zamd's reasonable accommodation request.

**ANSWER**

Defendant admits that on or around April 8, 2013, Plaintiff met with Amanda Tramantozzi and Ms. Martiny of Human Resources, during which time Tramantozzi confirmed

that Defendant was still evaluating her accommodation request. Defendant denies the remaining allegations set forth in Paragraph 37.

**COMPLAINT ¶38**

On or about May 9, 2013, Vertex instructed Ms. Zamd to produce an additional note from her doctor justifying her ability to travel and conduct site audits in light of her scents sensitivity.

**ANSWER**

Defendant admits that on or around May 9, 2013, Human Resources requested that Plaintiff ask Dr. Goh to provide further clarification about (1) Plaintiff's ability to conduct off-site audits, where neither Plaintiff nor Defendant had control over the environment, and (2) how many days per week Plaintiff should work from home as an accommodation to her scent sensitivity. Defendant denies the allegations set forth in Paragraph 38 that are inconsistent with the foregoing.

**COMPLAINT ¶39**

Although the additional material was irrelevant to the pending request for accommodation, Ms. Zamd submitted a second note from Dr. Goh, dated May 13, 2013, which stated that she was able to travel and to conduct site audits without the need for reasonable accommodation.

**ANSWER**

Defendant admits that by letter dated May 13, 2013, Dr. Goh submitted the requested supplementary information, which stated that Plaintiff could continue conducting off-site audits based on Plaintiff's stated means of avoiding scents while traveling. Defendant also admits that the letter stated that Plaintiff should begin by working from home three (3) days a week as an accommodation of her scent sensitivity. Defendant denies that the supplementary medical documentation was irrelevant to Defendant's evaluation of how to accommodate Plaintiff's putative sensitivity to scents.

**COMPLAINT ¶40**

From February through May 2013, Ms. Zamd suffered numerous symptoms including pain, dizziness, and other discomfort relating to the cumulative effect of her exposure to fragrances in the workplace including pain, dizziness, and other discomfort. At times, Ms. Zamd would work from home or take sick leave when her symptoms flared.

**ANSWER**

Defendant lacks sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 40.

**COMPLAINT ¶41**

Vertex never told Ms. Zamd that she was prohibited from working from home on an ad hoc basis when her scent sensitivity symptoms flared. Similarly, Vertex never told Ms. Zamd that she needed to give Vertex twenty four (24) hours' notice to work from home.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 41.

**COMPLAINT ¶42**

At no time did Vertex request that Ms. Zamd be examined by a physician of its choosing.

**ANSWER**

Defendant admits to the allegations set forth in Paragraph 42.

**COMPLAINT ¶43**

In April and May 2013, Ms. Waltz sent numerous emails to human resources, making baseless and unsupported complaints about Ms. Zamd's behavior and performance. Ms. Zamd never received notice of alleged performance concerns.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 43.

**COMPLAINT ¶44**

Following her request for accommodation, Ms. Waltz and Ms. Zamd's colleague, Margot Holland, began bullying and harassing her. Ms. Holland was rude and condescending to Ms. Zamd, and at other times completely ignored her and refused to acknowledge her. Ms. Waltz

began treating Ms. Zamd poorly and belittled her in front of colleagues. Following the April 1, 2013 meeting, Ms. Waltz stopped speaking entirely to Ms. Zamd, left her out of a presentation at a management meeting.

**ANSWER**

Defendant denies that allegations set forth in Paragraph 44.

**COMPLAINT ¶45**

On May 20, 2013, Ms. Zamd complained to Ms. Solt that Ms. Waltz and Ms. Holland had been bullying her since she requested accommodation.

**ANSWER**

Defendant admits that on May 20, 2013, Plaintiff told Ms. Solt that she believed that Ms. Waltz and Margo Holland were bullying her since she requested an accommodation. Defendant denies that either Ms. Waltz or Ms. Holland subjected Plaintiff to any adverse behavior because she requested an accommodation.

**COMPLAINT ¶46**

On May 20, 2013, three months after requesting accommodation, Vertex verbally informed Ms. Zamd that her request for accommodation had been granted, that she would be permitted to work from home three assigned days per week, and would be provided with a separate office space for the two days per week that she worked in Vertex's office.

**ANSWER**

Defendant admits that on May 20, 2013, Ms. Solt informed Plaintiff that she would be granted the accommodation of working from home a set three (3) days per week and that Defendant would provide her with a separate office for the two (2) days a weeks she reported to the office. Defendant further avers that Ms. Solt also confirmed that Plaintiff's physician had cleared her for travel. Defendant denies the allegations in Paragraph 46 that are inconsistent with the foregoing.

**COMPLAINT ¶47**

Human resources instructed that Ms. Waltz meet with Ms. Zamd on May 22, 2013 about implementing the accommodation. Because Ms. Waltz was wearing a strong scent that triggered Ms. Zamd's symptoms that day, Ms. Zamd asked if they could meet outside on the Vertex patio.

**ANSWER**

Defendant denies that Human Resources instructed Ms. Waltz to meet with Plaintiff on May 22, 2013. Defendant admits that Ms. Waltz attempted to meet with Plaintiff on May 21, 2013 to schedule which days Plaintiff would work from home, only to have Plaintiff unexpectedly work from home. Defendant further avers that Ms. Waltz again attempted to meet with Plaintiff on May 22, 2013 to discuss implementing the accommodation, only to have Plaintiff email Ms. Waltz that she and Ms. Waltz would have to meet on an outside patio because Plaintiff had a migraine due to Ms. Waltz's strong scented product. Defendant denies that Ms. Waltz was wearing any scented product on May 22, 2013. Defendant denies the remaining allegations of Paragraph 47.

**COMPLAINT ¶48**

Ms. Waltz refused to meet with Ms. Zamd outside.

**ANSWER**

Defendant admits that on May 22, 2013, out of concern that Plaintiff would continue her inappropriate behavior, Ms. Waltz opted not to meet with Plaintiff on the outside patio and sought advice from Human Resources as to how to respond to Plaintiff's false accusation. Defendant denies the allegations set forth in Paragraph 48 that are inconsistent with the foregoing.

**COMPLAINT ¶49**

Ms. Waltz expressed frustration and complained to human resources that Ms. Zamd's request to meet outside was "inappropriate."

**ANSWER**

Defendant admits that Plaintiff's conduct toward Ms. Waltz on May 22, 2013 was inappropriate. Defendant avers that Ms. Waltz reported Plaintiff's conduct to Human Resources and sought advice as to how to respond. Defendant denies the allegations set forth in Paragraph 49 that are inconsistent with the foregoing.

**COMPLAINT ¶50**

Later that afternoon, on May 22, 2013, just two days after granting her accommodation, Vertex terminated Ms. Zamd's employment. The ostensible reason for her dismissal was her failure to cooperate with Vertex, not trusting Vertex, and alleged complaints about her performance. These complaints had not been communicated to Ms. Zamd prior to giving her notice of her termination.

**ANSWER**

Defendant admits that on May 22, 2013, Defendant terminated Plaintiff's employment given, among other things, her persistent unprofessional behavior, poor communication, and interpersonal problems. Defendant denies that these problems had not been communicated to Plaintiff prior to her termination. Defendant also denies the remaining allegations set forth in this Paragraph.

**COMPLAINT ¶51**

Vertex never actually implemented a reasonable accommodation for Ms. Zamd's disability.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 51.

**COMPLAINT ¶52**

As a result of Vertex's treatment of her, Ms. Zamd has suffered damages, including but not limited to lost wages and emotional distress.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 52.

COUNT I

Discrimination Based on Disability and Failure to Accommodate
in Violation of 42 U.S.C. § 12112

Defendant hereby restates and incorporates its answers of the preceding paragraphs 1 through 52 herein.

**COMPLAINT ¶53**

Ms. Zamd was, at all times relevant to this action, a person with a disability, as defined by law.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 53.

**COMPLAINT ¶54**

Ms. Zamd was, at all times relevant to this action, able to perform the essential functions of her position with or without accommodation.

**ANSWER**

Defendant denies the allegations set forth in Paragraph 54.

**COMPLAINT ¶55**

Vertex had a duty to provide Ms. Zamd with reasonable accommodation, which it failed and refused to do.

**ANSWER**

Paragraph 55 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 55.

**COMPLAINT ¶56**

Vertex had a duty to refrain from discriminating against Ms. Zamd on account of her disability.

**ANSWER**

Paragraph 56 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies that it ever subjected Plaintiff to unlawful discrimination on the basis of her putative disability.

**COMPLAINT ¶57**

Notwithstanding its duty, Vertex discriminated against Ms. Zamd on account of her disability by, inter alia, treating her differently than non-handicapped employees, by removing her job duties, by denying her reasonable accommodation, and by terminating her employment, as more particularly described above.

**ANSWER**

Paragraph 57 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 57.

**COMPLAINT ¶58**

Vertex violated 42 U.S.C. §12112, by refusing to accommodate Ms. Zamd, and by discriminating against her, as more particularly set forth above.

**ANSWER**

Paragraph 58 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 58.

**COMPLAINT ¶59**

Vertex knew, or should have known, that its conduct violated 42 U.S.C. §12101, *et seq.*

**ANSWER**

Paragraph 59 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 59.

**COMPLAINT ¶60**

Vertex's violation of law has damaged Ms. Zamd.

**ANSWER**

Paragraph 60 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 60.

**COMPLAINT ¶61**

In depriving Ms. Zamd of her rights, Vertex acted knowingly and intentionally, with malice and/or with reckless indifference to Ms. Zamd's rights.

**ANSWER**

Paragraph 61 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 61.

**COMPLAINT ¶62**

Vertex is liable to Ms. Zamd for the violations of law set forth above.

**ANSWER**

Paragraph 62 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 62.

COUNT II

Retaliation in Violation of 42 U.S.C. § 12112

Defendant hereby restates and incorporates its answers of the preceding paragraphs 1 through 62 herein.

**COMPLAINT ¶63**

Vertex had a duty to refrain from retaliating against Ms. Zamd for having asserted her right to be free from violations of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*

**ANSWER**

Paragraph 63 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 63.

**COMPLAINT ¶64**

Notwithstanding its duty, Vertex retaliated against Ms. Zamd for having asserted her right to be free from violations of 42 U.S.C. §12101, et seq., by, inter alia, treating her differently than employees who had not sought accommodation, by removing her job duties, by unreasonably delaying her reasonable accommodation determination, by permitting employees to harass and bully her for seeking accommodation, by never implementing its proposed reasonable accommodation, and by terminating her employment, as more particularly described above.

**ANSWER**

Paragraph 64 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 64.

**COMPLAINT ¶65**

The retaliation more particularly described above violated 42 U.S.C. §12112.

**ANSWER**

Paragraph 65 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 65.

**COMPLAINT ¶66**

Vertex knew, or should have known, that its conduct more particularly described above violated 42 U.S.C. §12101, *et seq.*

**ANSWER**

Paragraph 66 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 66.

**COMPLAINT ¶67**

The retaliation more particularly described above has damaged the plaintiff.

**ANSWER**

Paragraph 67 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 67.

**COMPLAINT ¶68**

In retaliating against Ms. Zamd, Vertex acted knowingly and intentionally, with malice and/or with reckless indifference to Ms. Zamd's rights.

**ANSWER**

Paragraph 68 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 68.

**COMPLAINT ¶69**

Vertex is liable to Ms. Zamd for the violations of law set forth above.

**ANSWER**

Paragraph 69 contains conclusions of law to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 69.

PRAYER FOR RELIED AND DEMAND FOR JURY TRIAL

Plaintiff's Prayer for Relief and jury demand does not require a response. To the extent that a response is required, Defendant denies that that Plaintiff has suffered any damages or is entitled to the specific relief sought or to any relief whatsoever.

## ADDITIONAL DEFENSES

Defendant asserts the following affirmative defenses without assuming any burdens of production or proof that would otherwise rest with Plaintiff as a matter of law.

### FIRST ADDITIONAL DEFENSE

Plaintiff fails to state a claim upon which relief may be granted.

### SECOND ADDITIONAL DEFENSE

Plaintiff has failed to establish a prima facie case for any of her causes of action or otherwise cannot satisfy her burden of proof.

### THIRD ADDITIONAL DEFENSE

Plaintiff is not disabled as defined by the Americans with Disabilities Act ("ADA"), is not a "qualified" disabled person with the meaning of the ADA, and/or failed to engage in the interactive accommodation process in good faith.

### FOURTH ADDITIONAL DEFENSE

Plaintiff's claims are non-actionable because any employment decisions challenged were justified by legitimate, non-discriminatory, and non-retaliatory business reasons.

### FIFTH ADDITIONAL DEFENSE

Defendant acted in good faith, with reasonable grounds to believe that its conduct was lawful, and has complied with all laws and regulations and otherwise satisfied its statutory obligations toward Plaintiff under federal and state law.

### SIXTH ADDITIONAL DEFENSE

To the extent that Plaintiff's claims implicate Defendant's non-supervisory employees, Defendant is not liable.

SEVENTH ADDITIONAL DEFENSE

Plaintiff's claims are barred by the doctrines of waiver, laches, and/or estoppel.

EIGHTH ADDITIONAL DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

NINTH ADDITIONAL DEFENSE

Plaintiff's claims are barred to the extent the alleged events on which they are based occurred beyond the applicable statute of limitations.

TENTH ADDITIONAL DEFENSE

Without conceding that Plaintiff has suffered any damages as a result of any purportedly wrongful act by Defendant, Plaintiff's damages are limited or cut off to the extent that she has failed to mitigate her damages.

ELEVENTH ADDITIONAL DEFENSE

Without conceding that Plaintiff has suffered any damages, Defendant did not cause any damages that Plaintiff may have suffered nor is Defendant responsible for any such damages.

TWELFTH ADDITIONAL DEFENSE

Any claim for punitive, multiple, liquidated, or exemplary damages is barred because Defendant acted in good faith and with reasonable grounds for believing that its actions were lawful, and the allege acts or omissions of Defendant fail to rise to the level required to sustain a claim for such damages.

THIRTEENTH ADDITIONAL DEFENSE

Without conceding that Plaintiff suffered any discrimination, retaliation, or damages, Plaintiff's claims are barred or her damages, if any, are limited because her employer published policies against discrimination and harassment, acted reasonably to prevent discrimination and

harassment, and Plaintiff unreasonably failed to take advantage of the policies or accommodations, or to avoid harm otherwise.

## RESERVATION OF RIGHTS

Defendant reserves the right to raise additional defenses as may be discovered during the course of these proceedings.

WHEREFORE Defendant prays that the Court deny Plaintiff's prayer for relief, dismiss Plaintiff's Complaint, enter judgment in favor of Defendant, grant Defendant their costs, including attorneys' fees, incurred in this action, and provide Defendant with such other remedies as the Court may deem just and proper.

**DATED: September 8, 2017**

Respectfully submitted,
By Its Attorneys,

*/s/ Lynn A. Kappelman*

Lynn A. Kappelman (BBO# 642017)
lkappelman@seyfarth.com
Bridget M. Maricich (BBO# 670844)
bmaricich@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September 2017, a copy of the foregoing document was filed electronically through the Court's ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Lynn A. Kappelman*