**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**One Ashburton Place, Boston, MA 02108**
**Phone: (617) 994-6000 Fax: (617) 994-6024**

2/13/2014

Vertex Pharmaceuticals, Inc
Director of Human Resources
50 Northern Avenue
Boston, MA 02210

RE: Irene Zamd vs. Vertex Pharmaceuticals, Inc
MCAD Docket Number: 14BEM00335
EEOC/HUD Number: 16C-2014-00895

Dear Respondent:

The Massachusetts Commission Against Discrimination (MCAD) has received the above complaint of discrimination which alleges that you have committed an act of discrimination against the complainant. A copy of that complaint is enclosed.

State law requires the Commission to impartially review the allegations in that complaint. The Commission has assigned one of its staff, Abigail Soto, to investigate the complaint. This MCAD investigator will keep the parties informed of the course of the investigation.

State law requires that you submit a formal written answer to the complaint, called a Position Statement. This Position Statement must be submitted within twenty-one (21) days of receipt of this notification. The Position Statement must be signed under the pains and penalties of perjury. A copy must also be forwarded to the Complainant at the address listed on the enclosed complaint. Failure to file a Position Statement or other response within the prescribed time may result in sanctions being imposed in accordance with 804 CMR 1.16.

In order to reduce the time necessary to investigate and resolve complaints of discrimination, the MCAD schedules an Investigative Conference with the parties shortly after the complaint is filed. Information about that Conference is included with this notice.

An Investigative Conference regarding the above complaint will be held at the Commission's Offices, One Ashburton Place, Boston, MA, at 10:30 AM on 06/02/14. You are required to attend this Conference.

One important purpose of this Conference will be to determine whether the parties are willing to consider a rapid, informal and voluntary resolution of this dispute. The Commission encourages such resolutions as an alternative to the often lengthy and expensive litigation process.

Please be advised that Position Statements are to be addressed to Tania Taveras, Administrative Assistant. If you have any questions concerning Position Statements please call 617-994-6066.

If you have any questions pertaining to the Investigative Conference, please contact Abigail Soto at (617) 994-6125.

Sincerely,

Abigail Soto
Investigator
Cc:

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Vertex Pharmaceuticals, Inc
Director of Human Resources
50 Northern Avenue
Boston, MA 02210

| | |
|---|---|
| Person Filing Charge: | Irene Zamd |
| This Person (Check One): | ( ) Claims to be aggrieved<br>( ) Is filing on behalf of |
| Date of Alleged Violation: | 01/23/14 |
| Place of Alleged Violation: | Cambridge, |
| EEOC Charge Number: | 16C-2014-00895 |
| MCAD Docket Number: | 14BEM00335 |

NOTICE OF CHARGE OF DISCRIMINATION WHERE AN FEP AGENCY WILL INITIALLY PROCESS (See Attached Information Sheet For Additional Information)

You are hereby notified that a charge of employment discrimination under

[ ] Title VII of the Civil Rights Act of 1964
[ ] The Age Discrimination in Employment Act of 1967 (ADEA)
[ ] The Americans Disabilities Act (ADA)

Has been received by

[ ] The EEOC and sent for initial processing to <u>MCAD</u> (FEP Agency)

[ ] <u>The Mass. Commission Against Discrimination</u> (FEP) Agency and sent to the EEOC for dual filing purposes.

While the EEOC has jurisdiction (upon the expiration of any deferral requirements if this is a Title VII or ADA Charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This likelihood is increased by your active cooperation with the Agency.

[X] As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's issuing a final finding and order. If the agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained on the second page of this form apply.

<u>For further correspondence on this matter, please use the charge number(s) shown.</u>

[ ] An Equal Pay Act Investigation (29 U.S.C 206(d) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

[X] Enclosure: Copy of the Charge

Basis of Discrimination

| | | | | |
|---|---|---|---|---|
| ( ) Race | ( ) Color | ( ) Sex | ( ) Religion | ( ) National Origin |
| ( ) Age | ( ) Disability | ( ) Retaliation | ( ) Other | |

Circumstances of alleged violation:

SEE ENCLOSED COPY OF THE CHARGE OF DISCRIMINATION (or EEOC FORM 5)

| Date | Type Name/Title of Authorized EEOC Official | Signature |
|---|---|---|
| 2/13/2014 | Robert L. Sanders, Director | |

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**One Ashburton Place, Boston, MA 02108**
**Phone: (617) 994-6000 Fax: (617) 994-6024**

---

MCAD DOCKET NUMBER: 14BEM00335
FILING DATE: 01/24/14

EEOC/HUD CHARGE NUMBER: 16C-2014-00895
VIOLATION DATE: 01/23/14

---

Name of Aggrieved Person or Organization:

Irene Zamd
88 Paquin Drive
Marlborough, MA 01752

---

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:

Vertex Pharmaceuticals, Inc
Director of Human Resources
50 Northern Avenue
Boston, MA 02210

No. of Employees: 25+

Work Location:

---

Cause of Discrimination based on:
Disability, Disability.

---

The particulars are:
I, Irene Zamd, the Complainant believe I was discriminated against by Vertex Pharmaceuticals, Inc, on the basis of Disability. This is in violation of M.G.L. 151B Section 4 Paragraph 4 and 16 and ADA.

---

I hereby verify, under the pains and penalties of perjury, I have read this complaint and the allegations contained herein are true to the best of my knowledge.

(Signature of Complainant)

**JAMES F. NORTON**
**ATTORNEY AT LAW**
**117 CONGRESS STREET**
**BRAINTREE, MA 02184**
**Phone: (617) 347-9391**
**Fax: 1 (781) 394-0248**
**Email: JFNortonLaw@gmail.com**

January 23, 2014

MCAD
JAN 24 2014
RECEIVED

Massachusetts Commission Against Discrimination
One Ashburton Place
Sixth Floor, Room 601
Boston, MA 02108

Re: Irene Zamd – Charge of Discrimination

Dear Sir/Madam:

I represent Ms. Irene Zamd in connection with her claim alleging discrimination on the basis of handicap status against her former employer, Vertex Pharmaceuticals, Inc.

Enclosed for filing please find a charge of discrimination and Ms. Zamd's verified complaint.

Please acknowledge the filing of this charge and initiate an investigation. If you need any additional information at this time please contact me.

Thank you for your consideration.

Very truly yours,

James F. Norton

JFN
cc: Irene Zamd
enclosure

# CHARGE OF DISCRIMINATION
## MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND EEOC

FEPA Number: Filing Date:

EEOC Number: Violation Date: May 22, 2013

Name of Aggrieved Person:
Irene Zamd
88 Paquin Drive
Marlborough, MA 01752

Telephone Numbers
(619) 508-8105

c/o Atty. James F. Norton (BBO # 374190)
117 Congress Street
Braintree, MA 02184

Phone: ~~(671)~~ 617 347-9391
Fax: (781) 394-0248
email: JFNortonLaw@gmail.com

The Employer Who Discriminated Against Me:

Vertex Pharmaceuticals, Inc.
50 Northern Avenue
Boston, MA 02210
Phone: (617) 341-6100
No. of Employees: ≥ 6

Employer's Counsel:

MCAD JAN 24 2014 RECEIVED

Cause of Discrimination Based On: Handicap (disability)

The Particulars Are: Please see the Verified Complaint of Irene Zamd attached.

I also want this charge filed with the EEOC: ___X___

I will advise the Agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I swear or affirm that I have read this complaint, and the accompanying statement, and that they are true to the best of my knowledge, information and belief.

23 January 2014
Date

[signature]
Irene Zamd

COMMONWEALTH OF MASSACHUSETTS
BEFORE THE COMMISSION AGAINST DISCRIMINATION

MCAD Docket No.

| | |
|---|---|
| IRENE ZAMD<br>*Complainant,* | ) |
| v. | ) |
| VERTEX PHARMACEUTICALS, INC.<br>*Respondent* | ) |

MCAD JAN 24 2014 RECEIVED

VERIFIED COMPLAINT

1. The Complainant, Irene Zamd, resides in Marlborough, Massachusetts and is a former employee of the Respondent. Ms. Zamd brings this complaint against the Respondent, Vertex Pharmaceuticals, Inc. ("Vertex" or "Respondent") for discrimination on the basis of handicap and retaliation.

2. Vertex is a Massachusetts corporation with a new principal place of business at 50 Northern Avenue, Boston, MA 02210. During the period of time relevant to the events reflected in this Complaint, Vertex' principal place of business was 130 Waverly Street, Cambridge, MA 02139.

3. Ms. Zamd was employed by Vertex as a Lead Quality Assurance Auditor/Specialist within Vertex Quality Compliance Management [QCM] Good Clinical Practice division from June 14, 2010 until her termination on May 22, 2013.

4. In this capacity, Ms. Zamd carried out audits of pharmaceutical studies, vendors, processes, documents and other functions to assure compliance with internal protocols, and applicable federal and state regulations, and in foreign countries to assure and verify compliance with applicable laws and regulations.

5. During the course of her employment, Ms. Zamd performed her duties faithfully and diligently, consistently receiving among the highest performance ratings.

6. In her most recent performance evaluation, in December, 2012, Ms. Zamd received the highest performance rating available from her immediate supervisor and manager, Deborah Waltz, then the Senior Director of QCM. From the time of this performance review until her termination, Ms. Zamd received no criticism of her job performance.

7. From in or around 1989, Ms. Zamd has suffered from Multiple Chemical Sensitivity, a condition which causes Ms. Zamd to suffer from severe headaches, nausea and respiratory difficulties when she is exposed to products containing fragrances. It is believed by Ms. Zamd's health care providers that this condition stems from an otherwise benign cyst within her brain.

8. When exposed to these fragrances, the symptoms often render Ms. Zamd so ill that she is unable to work until she is outside of the influence of such fragrance.

9. Ms. Zamd reported this condition to her employer and to her co-workers when she began her employment with Vertex, and thereafter, her fellow employees generally refrained from wearing or using any fragrances which caused the above-referenced symptoms. Ms. Zamd was therefor able to function effectively in the performance of her duties.

10. Ms. Zamd's job duties included traveling to the locations where the clinical trials were being conducted to perform audits, and required Ms. Zamd to interview the health care professionals directing and conducting the trials, and to review the records of the conduct of the trials. Ms. Zamd was usually able to make arrangements with the people with whom she had to work at these audit locations to refrain from using fragrances that would trigger her symptoms. Similarly, when Ms. Zamd had to attend audits at remote locations she was able to make arrangements with members of airline flight crews to change seats

when she encountered fragrances which triggered her symptoms.

11. In the latter part of 2012, the workforce in the area where Ms. Zamd worked changed, and as a consequence Ms. Zamd found that she was being exposed to fragrances that triggered her symptoms which prevented her from performing the functions of her job while working in the company's Cambridge facility. As noted above, Ms. Zamd was still able to perform the external audit functions with the appropriate planning and preparation.

12. In February, 2013, Ms. Zamd initiated her efforts to get an accommodation to her sensitivity. Ms. Zamd spoke first with Robert Castellucci, Vertex' Vice-President of Quality, and told him about her sensitivity to fragrances, the symptoms she suffered when she was in the vicinity of such fragrances, and asked him to provide an accommodation. Ms. Zamd requested that she be allowed to work from home for at least part of the work week. Ms. Zamd's request was denied despite the fact that employees within Ms. Zamd's department had worked from home for appreciable periods of time in the past, and despite the fact that one current employee in the department was allowed to work from her home in Canada two consecutive weeks of four weeks of work. Mr. Castellucci did offer to send out a general email to the employee population informing them of this issue, but never sent any such email. The use of fragrances in the workplace continued.

13. Ms. Zamd then spoke with her immediate supervisor and manager, Ms. Deborah Waltz, who referred Ms. Zamd to the Vertex Human Resources Department (hereafter "HR"). HR representatives requested that Ms. Zamd obtain a statement from her health care provider to substantiate her condition.

14. On March 13, 2013, Ms. Zamd provided a statement from her health care provider, Dr. Michele Goh. Dr. Goh described Ms. Zamd's condition, and recommended that Ms. Zamd not work in areas where scented products and essential oils were prevalent, and

recommended that Ms. Zamd be permitted to from home for at least part of the work week. (A copy of this letter is attached as Exhibit A to this Complaint.)

15. On April 1, 2013, Ms. Waltz informed Ms. Zamd that her request to work from home had been denied by HR, and also informed Ms. Zamd that because of her condition, and the inability of Vertex to control her environment when she is working off site, she would no longer be permitted to travel or perform any audits on behalf of Vertex. Ms. Zamd had been scheduled to perform an audit in Ireland but Ms. Waltz reassigned this audit to another employee. Ms. Waltz suggested to Ms. Zamd that she may want to transfer to another department within Vertex. Ms. Zamd complained to HR about this and requested a meeting to discuss the matter.

16. Ms. Waltz' statement to Ms. Zamd that HR had denied her request for a reasonable accommodation was false. HR was still processing Ms. Zamd's request, and on or about May 9, 2013 asked Ms. Zamd to have her doctor provide some additional information about her condition and how it may be accommodated by Vertex. On May 13, 2013, Ms. Zamd's doctor provided a report with such additional information to Vertex. (A copy of this letter is attached as Exhibit B to this Complaint.)

17. In April and May 2013, Ms. Waltz sent emails to HR representatives falsely criticizing Ms. Zamd's behavior and performance despite the fact that Ms. Waltz had not spoken to Ms. Zamd about such criticisms.

18. On or about May 20, 2013, Ms. Zamd met with Ms. Amanda Tramantozzi, an HR representative, and Ms. Jane Martiny, Vertex Sr. Benefits Specialist. At this meeting Ms. Zamd informed the HR representatives that Ms. Waltz had told her that her request to work from home had been denied by HR. It was apparent to Ms. Zamd that HR was not

aware of Ms. Waltz' directives and that HR had not denied her request. At this meeting, HR representatives told Ms. Zamd that her request had been approved and that Vertex would allow her to work from her home for three days per week, and that she would likely be provided with a private office for work at the Cambridge facility for the other two work days each week. The HR representatives also told Ms. Zamd that she would be able travel and to conduct audits away from the office as she had in the past.

19. On May 22, 2013, Ms. Zamd received a formal letter of approval of her request for a reasonable accommodation from Jane Martiny of HR which was consistent with the verbal approval she had received on May 20, 2013. (A copy of this letter is attached as Exhibit C to this Complaint.)

20. On the same day that she received the letter from HR, Ms. Zamd was called into a meeting with Ms. Emily Kuperstein, HR Director and Mr. Castellucci, where she was terminated, allegedly for failure to cooperate with Vertex, not trusting Vertex, and because of complaints from Vertex internal clients about her performance. This was the first time that Ms. Zamd had heard any of these complaints from Vertex.

21. Ms. Zamd suffered from a serious medical condition which interfered with her ability to perform certain life activities, including the ability to work.

22. Notwithstanding her disability, Ms. Zamd was able to perform all of the essential functions of her job with the reasonable accommodation described in the May 22, 2013 letter of approval. (See Exhibit C).

23. Although Vertex eventually granted her reasonable accommodation, Vertex terminated her employment. Such termination was because of her request for a reasonable accommodation and in retaliation for her seeking such reasonable accommodation.

24. By the foregoing actions, Vertex discriminated against Ms. Zamd on the basis of her disability, and in retaliation for her asserting a request for a reasonable accommodation.

25. As direct and proximate result of the conduct or Vertex, Ms. Zamd has suffered substantial monetary damages and severe emotional distress.

I, Irene Zamd, swear or affirm that I have read this Verified Complaint, and that The facts stated therein are true to the best of my knowledge, information and belief, and I sign this Verified Complaint under the pain and penalty of perjury.

23 January 2014
Date

Irene Zamd
Irene Zamd

# Charles River Medical Associates, P.C.

Washington Street
[illegible], MA 01749
Tel: 978.562.0564
Fax: 978.562.5646

Michele Goh, M.D.
*Internal Medicine*

Mar 13, 2013

RE: Irene Zamd

To Whom It May Concern

Irene Zamd is a patient of my medical practice at Charles River Medical Associates since 2007. I have been working with Irene on her hypersensitivity to scented products and essential oils which has not improved despite treatments and specialist consultations including allergists and neurologists. MRIs have shown a 5cm cyst above and behind her left eye. Various neurosurgeons have considered draining the cyst and suspected its proximity to the olfactory nerve might be responsible for the symptoms.

Irene's symptoms vary in intensity and occur in enclosed environments. Symptoms include severe headaches, nausea, numbness in right side of face and neck, metallic taste in her mouth and tingling in her tongue and as of late sporadic difficulty in concentrating.

At this time, I am recommending that Irene remove herself from places where these scents may be prevalent. As such, it may help her to work from home even if only for a few days a week where she has control over her environment and won't be continuously exposed.

Please contact my office for any questions.

Sincerely

Michele Goh MD

**EXHIBIT A**

# Charles River Medical Associates, P.C.

157 Washington Street
Hudson, MA 01749
Tel: 978.562.0564
Fax: 978.562.5646

Michele Goh, M.D.
*Internal Medicine*

May 13, 2013

Re: Irene Zamd

To whom it may Concern:

My patient, Irene Zamd, has indicated that her employer needs specific recommendations for dealing with her hypersensitivity to scented products.

As indicated in my letter dated March 13, 2013, it would be beneficial for Irene to remove herself from scents and smells which, as indicated by her, are prevalent in her workplace. Given current available communication technologies, working from home would be the solution, starting on a 3 day at home, 2 day at work schedule. Since it is Irene who is the affected person, she would have to evaluate whether this schedule works or whether she needs to adjust.

Irene has indicated that when traveling, she requests the flight crew to be seated in a different area if someone in her surrounding is wearing a scented product, and that has worked. When doing audits at a clinic or hospital, Irene has indicated to the nurse of her condition and has not had a push back. Since medical personnel do not routinely use scented products, Irene can continue doing audits.

If there are any questions or concern please contact my office.

Sincerely,

[signature]

Michele Goh, M.D.

**EXHIBIT B**

VERTEX

Human Resources
Jane Martiny
Sr. Benefits Specialist

| | |
|---|---|
| Direct Line: | 617-341-6739 |
| Fax: | 857-263-4531 |

Vertex Pharmaceuticals Inc.
130 Waverly Street
Cambridge, MA 02140
Phone: 617-341-6100
www.vrtx.com

May 22, 2013

Irene Zand
P.O. Box 5057
Framingham, MA 01701

Re: Accommodation Approval

Dear Irene:

I write to confirm our discussion on May 20, 2013 with regard to your request for an accommodation. As per letters provided to Vertex by your treating physician, we understand that you have a medical condition that causes hypersensitivity to scented products and oils. Your physician indicated that it would be beneficial for you to remove yourself from scents and smells and work from home 3 days per week and in the office 2 days per week.

As we have discussed previously, this position generally requires your presence in the office. However, as per our discussion today, in order to accommodate you and your medical condition, Vertex will grant your request to work from home 3 days per week. In order to ensure smooth business operations, you will be required to designate three specific days per week (*e.g.*, Mondays, Wednesdays and Fridays) during which you will be scheduled to work from home. Please work directly with your supervisor to agree upon a schedule that will align with the business unit's needs.

In addition, we have offered you the opportunity to be relocated from an open-air "cube" office to an office with a door, and you have accepted this offer. Your supervisor will identify your office as soon as possible.

You have indicated that you will be able to perform the essential functions of your position with these accommodations. Should you anticipate any changes to your work-at-home days, please contact me as soon as possible.

Irene, please carefully review this letter and contact me at (617) 341-6739 if you have any questions or concerns about its provisions. Please return a signed copy within *one week from the date of this letter* to indicate your agreement with these terms and conditions.

Sincerely,

Jane Martiny

Jane Martiny
Sr. Benefits Specialist

**EXHIBIT C**

Acknowledged: ______________________________ Date: ____________________

Employee Signature