UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

--------------------------------------------x
IRENE ZAMD,
Plaintiff,

v. Civil Action No. 1:17-cv-11219

VERTEX PHARMACEUTICALS, INC.,
Defendant.
--------------------------------------------x

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rules of Civil Procedure 37(a)(3)(B)(iii), Plaintiff Irene Zamd seeks an order compelling Defendant, Vertex Pharmaceuticals, Inc. ("Vertex"), to provide complete responses to her discovery requests and to compel Defendant's 30(b)(6) witness to provide testimony on the requested topics. In particular, the Plaintiff moves to compel the Defendant to provide complete responses concerning: A) its asserted reasons for terminating the Plaintiff's employment; B) comparator information; and C) its efforts to identify the information the Plaintiff seeks. Defendant has objected to and has refused to produce complete responses to the Plaintiff's requests related to the above areas, citing boilerplate objections of undue burden and over breadth, without giving sufficient facts in support of its position. Because only Vertex possesses the information, documents and testimony Ms. Zamd seeks, she would suffer significant prejudice unless the Defendant is ordered to produce information that is clearly

discoverable.

## I. Factual background

Plaintiff Irene Zamd alleges that her former employer, Defendant Vertex Pharmaceuticals, Inc,, discriminated against her on the basis of disability, failed to accommodate her disability, and retaliated against her for requesting reasonable accommodation and for complaining of discrimination.

Plaintiff worked at Vertex's in the Good Clinical Practice ("GCP") division of the Quality Assurance Department ("Quality") conducting audits of clinical trials from June 2010 until her termination in May 2013. Plaintiff's First Amended Complaint, ¶¶ 7, 10. Beginning in September 2012, Ms. Zamd directly reported to Deborah Waltz, when Ms. Waltz became the Senior Director of Quality, and Ms. Waltz, in turn reported to, Robert Castellucci, the Vice President of Quality. *Id.*, ¶¶ 19, 22. Mr. Castellucci was then Ms. Zamd's second-level supervisor. *Id.*, ¶ 22. During Ms. Zamd's employment with Vertex, there were between six to eight employees in the GCP division, and likely no more than sixty-five in all of Quality.[1] Following Ms. Zamd's termination on May 22, 2013, Ms. Waltz continued in her role as Sr. Director of Quality until April 2014 when she left Vertex. Robert Castellucci remains the Vice President of Quality today.

In 2011 and 2012, Ms. Zamd's received the highest possible rating on her annual performance evaluations. Ms. Waltz completed Ms. Zamd's last evaluation in December

[1] Plaintiff estimates these employee counts. Defendant has failed to produce any information on these points.

2012, just months before Vertex terminated her. *Id.* ¶ 10. In February of 2013, Ms. Zamd requested a reasonable accommodation to work from home due to her multiple chemical sensitivity, a medical condition likely resulting from a five centimeter cyst in her brain. *Id.* ¶ 13. Due to her condition, when Ms. Zamd is exposed to certain scented products, she experiences, among other things, severe headaches, nausea, numbness on one side of her face, and respiratory difficulties. *Id.* ¶ 13. Although Ms. Zamd had experienced symptoms of her multiple chemical sensitivity for many years, by February 2013, some of Ms. Zamd's newer colleagues at Vertex had begun to use scented products regularly, which exacerbated her symptoms. *Id.* ¶ 20. On February 20, 2013, shortly after Ms. Zamd made her reasonable accommodation request, Ms. Waltz, emailed Vertex human resources to question whether Ms. Zamd should conduct an upcoming audit due to her disability and request for accommodation. *Id.* ¶ 27. Notably, Ms. Zamd had not requested a reasonable accommodation relating to her audit duties since medical facilities typically do not permit the use of scented products, so Ms. Zamd did not need a reasonable accommodation for that element of her work. *Id.* ¶¶ 18, 28, 29. Following her reasonable accommodation request, Vertex did not permit Ms. Zamd to conduct any audits.

Ms. Zamd's reasonable accommodation request centered on her asking to work from home on a scheduled basis to avoid the cumulative effects of being exposed to scented products in Vertex's offices. Ms. Zamd knew that at least one colleague, Margo Holland, worked from home as part of a normal schedule. Vertex did not permit Ms.

Zamd to work from home on a regular (i.e. pre-scheduled) basis. Instead, it only permitted Ms. Zamd to work from home ad hoc if she experienced her debilitating symptoms. (Vertex later claimed that Ms. Zamd's intermittent absences due to her medical condition contributed to their decision to terminate her for alleged performance issues.) During the months following Ms. Zamd's request, Vertex *increased* Ms. Zamd's time in the office by prohibiting her from performing audits (which usually require she be out of the office for days or weeks at a time). *Id.* ¶ 38, 39—even though Ms. Zamd's disability predated her employment at Vertex, and she had successfully performed audits in the 2.5 previous years at Vertex. For several months, Ms. Zamd languished while Vertex decided whether to allow her to regularly work from home, and during this time she frequently experienced severe symptoms, such as headaches, nausea, respiratory problems, and numbness. *Id.* ¶ 40.

On May 20, 2013, after three months of waiting to learn whether she could regularly work from home and return to her audit duties, Vertex human resources verbally informed Ms. Zamd that the company had granted her request for reasonable accommodation, it would permit her to work three days per weeks from home, and instructed her to meet with Ms. Waltz regarding its implementation. *Id.* ¶ 46. On May 22, 2013, Ms. Zamd asked Ms. Waltz to meet on a Vertex patio instead of in her office, because of Ms. Waltz's use of a scented product that day. *Id.* ¶ 47. Ms. Waltz complained via email to Vertex human resources about Ms. Zamd's "inappropriate" request to meet outside. *Id.* ¶ 49. Within a few hours of Ms. Zamd asking Ms. Waltz to

meet outside, Vertex fired her, stating to her for the first time that her performance in the previous months was so poor as to justify her termination. *Id.* ¶ 50.

## II. Procedural History

On June 30, 2017, Ms. Zamd filed a two-count Complaint against Vertex alleging that Vertex: 1) discriminated against her by failing to accommodate her disability in violation of 42 U.S.C. § 12112; and retaliated against Ms. Zamd for requesting reasonable accommodation by removing job duties, harassing her and treating her differently than employees who had not sought accommodation, and ultimately terminating her employment in violation of 42 U.S.C. § 12112. On November 21, 2017, Ms. Zamd filed a First Amended Complaint adding a count of regarded-as disability, in violation of 42 U.S.C. § 12112.

## III. Discovery

Ms. Zamd served modest discovery requests in this matter. On September 25, 2017, Ms. Zamd served Plaintiff's First Request for Production (19 total). On October 18, 2017, the parties entered into a Confidentiality Agreement. On November 20, 2017, Ms. Zamd served Plaintiff's First Set of Interrogatories (13 total). On December 20, 2017 Ms. Zamd served a 30(b)(6) deposition notice, with an attached Schedule A, which the parties agreed to treat as a request for production (11 total). Several of the areas identified in the 30(b)(6) are duplicative of Plaintiff's First Requests for Production and thus would not require an additional document production.

The Defendant has produced some documents in response to the First Request

for Production, and has provided partial interrogatory answers, but it has objected to and refused to produce full documents and information.[2] Vertex also has not produced any documents responsive to the 30(b)(6) request for production, and has objected to them as deposition topics. To date, the parties have taken the depositions of Ms. Zamd and Katherine Solt, who directly handled Ms. Zamd's reasonable accommodation request, and was actively involved in her termination. (Ms. Solt remained with the company until October 2016.) In addition to a Rule 30(b)(6) witness, the Plaintiff has noticed the depositions of her former supervisors (Deborah Waltz and Robert Castellucci), a coworker (Margo Holland) and human resource personnel (Jane Martiny and Amanda Tramantozzi).

### IV. Good Faith Conferral Certification

Plaintiff's and Defendant's counsel conferred several times by phone and by email in a good faith effort to narrow the discovery issues, yet they were unable to come to agreement on the outstanding issues addressed by this motion.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties can obtain relevant information to a claim or defense, considering, among other factors, "the parties' relative access to relevant information," "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely

[2] Vertex has produced approximately 1900 pages of documents in this matter, of which it appears up to half are duplicates.

benefit." For its part, the party resisting discovery "has the burden of showing specifically how each interrogatory…is overly broad, burdensome, or oppressive." *BPP Retail Props., LLC v. N. Am. Roofing Servs., Inc.,* 300 F.R.D. 59, 61 (D.P.R. 2014), *quoting Vazquez-Fernandez v. Cambridge Coll, Inc.* 269 F.R.D. 150, 155-56 (D.P.R. 2010). Rule 26(b)(2)(C) limits discovery production only if a court determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit […]." As the Supreme Court has emphasized, because discovery "is designed to help define and clarify the issues," courts should construe Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue … in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978); *see also Thomas & Betts Corp. v. New Albertson's, Inc.*, Civil Action No. 10-11947-DPW, 2013 U.S. Dist. LEXIS 190928, at *11-13 (D. Mass. July 11, 2013).

## ARGUMENT

### I. Plaintiff's Discovery Requests Plainly Fall Within the Bounds of Rule 26 And Defendant Cannot Meet Its Burden Of Establishing A Legitimate Basis For Its Refusal to Produce the Requested Discovery.

Ms. Zamd seeks responses directly relevant to her three count Complaint: 1)

information regarding her allegedly poor performance,[3] which Defendant claims is the reason why it fired her three months after her request for accommodation and five months after she received a superb performance evaluation; 2) information concerning possible comparators (going to the decision-maker's intent and state of mind in connection with their dealings with Ms. Zamd), and specifically, those employees who sought to work from home,[4] and those who were terminated for alleged performance reasons; and 3) information regarding Vertex's efforts to produce information in discovery.[5]

### A. This Court Should Order Defendant to Produce Specific Information Concerning Alleged Poor Performance and Instanced Vertex Communicated the Same to Ms. Zamd Because Defendant Has Not Made Even A Minimal Showing Of Its Rule 26 Obligations

This Court should compel Defendant to give a factual response, documents and testimony to Plaintiff's Interrogatory Nos. 2-4 and 30(b)(6) deposition notice Schedule A Topic I(d), which elicit information regarding Ms. Zamd's alleged poor performance. Defendant does not claim that these discovery request are irrelevant, nor could it: the Interrogatories strike at the heart of Vertex's defense that it fired Ms. Zamd because she was a poor employee, and not because of Ms. Zamd's request for accommodation

---

[3] This information relates to Interrogatory Nos. 2-4 and 30(b)(6) Requests for Production, subpart I. *See* Defendant's Answers to Plaintiff's First Set of Interrogatories, attached as Exhibit 1, and Defendant's Objections to Plaintiff's Schedule A Requests in the 30(b)(6) Deposition Notice, pg. 1-3, attached as Exhibit 2.

[4] This information relates to Interrogatory Nos. 12, 13 and 30(b)(6) Requests for Production II and IV. *See* Exhibit 1, and Exhibit 2, Section II, pg. 3-4.

[5] *See* Exhibit 2, Section VI, pg. 4-5.

and/or documented disability.

Interrogatory No. 2 asks Defendant to "identify each instance that it communicated [to plaintiff] the performance problems alleged in [paragraph 50] of Defendant's Answer […]," Interrogatory No. 3 requests any alleged performance issues other than those Defendant identified in paragraph 50 of its Answer, and Interrogatory No. 4 asks Defendant to "Identify all communications to the plaintiff concerning alleged performance deficiencies other than those" identified in Interrogatory No. 2. Schedule A Topic I (d), to the 30(b)(6) deposition notice, asks Vertex to identify instances when Vertex claims to have communicated or discussed Ms. Zamd's poor performance with her. The discovery at issue seeks information concerning Vertex's asserted reasons for Ms. Zamd's termination. Such information is plainly discoverable. In response to the interrogatory requests, Vertex objected and claimed—without any factual support—that the production of the requested information is unduly burdensome, and that the alleged burden is "exacerbated by the passage of time in this matter as the events in question occurred more than four and a half years ago or, in some instances, even longer" and suggests that the solution is to shift the cost of a response on to Ms. Zamd and require her to conduct (and thus pay) for depositions to elicit the information. This argument fails for several reasons. First, the individuals directly involved in Plaintiff's termination no longer work for Vertex, therefore Defendant alone knows which of the alleged performance problems it references in its Answer are responsive to Interrogatory No. 2. Second, to the extent Ms. Zamd may wish to depose witnesses who have responsive

information, it impermissibly denies her the ability to challenge a deponent's memory should Vertex's identification of alleged performance issues differ from a deponent's recollection. *See Thomas & Betts Corp. v. New Albertson's, Inc.*, Civil Action No. 10-11947-DPW, 2013 U.S. Dist. LEXIS 190928, at *15-16 (D. Mass. July 11, 2013) (stating that a party should not be prevented from obtaining discovery "on the same topics by other methods" and that "'When information has already been provided in other forms, a witness may still be useful to testify as to the interpretation of papers, and 'any underlying factual qualifiers of those documents"' (citations omitted).

Although Vertex's burden objections could be due to the fact that it may not readily have available the information, that reason is no excuse. Even in cases where obtaining information is difficult due to a defendant's own poor record-keeping, courts do not absolve defendants from its discovery obligations. *See Sanchez-Medina v. Unicco Serv. Co.*, 265 F.R.D. 24, 28 (D.P.R. 2009) *citing Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. at 61 ("Courts have been loathe to reward (and possibly encourage) poor record keeping by shielding companies with inefficient recording methods from discovery.")

Ultimately, Vertex could satisfy all three Interrogatories and 30(b)(6) topic I(d) were it simply to state in a written response that the documents it has produced reflect the only instances that Defendant communicated alleged performance problems (insofar as any of those documents could be read to do so). However, because Vertex has not done so, Plaintiff can only assume that there are other communications (perhaps verbal) that Vertex has not identified, but intends to rely on at trial. Therefore, because

Defendant has not made any showing of undue burden, and because its other justifications are unavailing, this Court should order Vertex to produce all of the information responsive to Interrogatory Nos. 2 – 4, and documents and testimony responsive to Schedule A I(d).

### B. This Court Should Order Defendant to Produce Specific Information Concerning Comparators, And Defendant Has Not Made Even A Minimal Showing That Plaintiff's Requests Are Unduly Burdensome or Overbroad.

Due to the nature of Ms. Zamd's claims, there are two categories of comparators for which she is entitled to relevant discovery: 1) to non-disabled employees in Quality who sought permission to work from home (for any reason, including due to a reasonable accommodation), and 2) employees in Quality who were terminated for alleged performance reasons.

"The most probative means of establishing that the plaintiff's termination was a pretext for racial discrimination is to demonstrate that similarly situated white employees were treated differently." *Bond v. Mass. Bay Commuter R.R., LLC*, 2013 U.S. Dist. LEXIS 166346, at *20-21 (D. Mass. Nov. 22, 2013), quoting *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 686 N.E.2d 1303, 1309 (Mass. 1997). As described below, Ms. Zamd seeks information, documents and testimony regarding relevant comparators, and Vertex has not made even a minimal showing that the discovery Plaintiff seeks is unduly burdensome or overbroad.

i. <u>The comparator information concerning other employees who sought to work from home is relevant because it directly relates to Plaintiff's claims and Defendant's defenses, and Defendant has not made any factual showing that the requests are unduly burdensome or overbroad</u>.

This Court should order Vertex to produce the comparator information Ms. Zamd seeks in Interrogatory Nos. 12 and 13 and Schedule A III(a) (regarding individuals who sought to work from home) because that information is directly relevant to Ms. Zamd's retaliation, regarded as, and failure to accommodate claims. See, *Vazquez-Fernandez v. Cambridge Coll., Inc.*, 269 F.R.D. 150, 156 (D.P.R. 2010) (ordering defendant to identify all individuals it hired and fired in a seven year period, including their positions, duties and dates of birth), *and Waugh v. BJ's Wholesale Club, Inc.*, No. 12-12282-TSH, 2014 U.S. Dist. LEXIS 12921 (ordering defendant to provide plaintiff with lists of employees who: 1) requested FMLA for mental health issues during a seven year period, or 2) who filed complaints of age or disability discrimination during a seven year period, or 3) who filed internal complaints with company officials during a seven year period).

Ms. Zamd has alleged that Vertex failed to accommodate her disability, and retaliated against her after she requested a reasonable accommodation to work from home, due to her chemical sensitivity condition. Ms. Zamd knows very little about possible comparators. Information concerning how long it took Vertex human resources (specifically, human resource employees Ms. Solt and Ms. Tramantozzi) to respond to requests to work from home for any reason (due to a disability or otherwise) is highly relevant; and differences between the outcomes of other employee's requests and Ms. Zamd's would be probative of Vertex employees' state of mind and intent.

Indeed, if information exists demonstrating that Ms. Solt, Ms. Tramantozzi, Ms. Waltz, and/or Mr. Castellucci were involved in the termination of an employee following his/her request for accommodation, the Plaintiff would be entitled to such information even if the incidents concerned arose after her termination, because it goes to the intent and state of mind of the decision makers in her case. Similarly, if the above individuals granted other employees' requests to work from home within a shorter period of time, that would raise questions as to why Ms. Zamd had to wait three months for a decision to her request for accommodation. Additionally, because human resources (particularly Ms. Solt) played such a central role in Ms. Zamd's reasonable accommodation evaluation and termination, there could be comparators outside of the approximately 65 -person GCP division, or whatever smaller subdivision comprises of Ms. Zamd's undefined "audit group." Exhibit 2, p. 5.

Initially, the Defendant objected to and refused to respond to Interrogatory Nos. 12 and 13 on the grounds that the information sought was overly broad, unduly burdensome, and sought immaterial information. It has since stated it will respond to Interrogatory Nos. 12 and 13, but only for the period September 2012 (when Vertex hired Ms. Waltz) through Ms. Zamd's May 22, 2013 termination, and only for employees within the smaller GCP group (totaling 6 to 8 individuals). This proposed production is unreasonably narrow given that Vertex human resources is the entity that determines which reasonable accommodations to make, and it is also heavily involved in employee terminations. Thus Vertex's arbitrary reliance on Ms. Waltz's start date and Ms. Zamd

termination date is inapt given that Plaintiff also seeks discovery on Ms. Solt's and Ms. Tramatozzi's practices with possible comparators.

As for the Schedule A III(a), Vertex states it will only give information relating to individuals in Ms. Zamd's "audit group" (a term Plaintiff has never heard, and which Defendant does not define). As explained below, Plaintiff needs and is entitled to information for at least all of Quality, which is the most modest comparison group, (*see Velez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 451 (1st Cir. 2009)(1st Cir. 1996)(discussing similarly situated employees) *and Waugh v. BJ's Wholesale Club, Inc.*, No. 12-12282-TSH, 2014 U.S. Dist. LEXIS 12921, (D. Mass. Feb. 3, 2014) (permitting discovery on comparators nation-wide), and Vertex is unable to rebut the argument that the information Ms. Zamd seeks is relevant, nor has Vertex made even a minimal showing that the requests are unduly burdensome or overbroad.

Vertex has not provided any support to its allegations of undue burden. In fact, although its responses marginally imply that multiple people have requested to work from home and that many people requested a reasonable accommodation for a disability, it never actually states that. Vertex has not even stated how many employees it had in Quality, GCP, or the undefined "audit group," nor how many individuals Ms. Solt and Ms. Tramatozzi, and other human resources personnel who were involved (and Mr. Castelluci and/or Ms. Waltz, insofar as they had any input) determined who could obtain a reasonable accommodation and/or work from home. Thus, although Vertex asserted that there are an unwieldly number of responses, and it failed to provide any information

or data that could be used in support of that argument.

Similarly, Vertex's suggestion that Plaintiff obtain responses through depositions does not result in Ms. Zamd obtaining the information she needs because it denies her the ability to challenge a deponent's memory should Vertex's responses to Interrogatory Nos. 12 and 13 differ from a deponent's recollection. *See New Albertson's, Inc.*, 2013 U.S. Dist. LEXIS 190928, at *15-16 (D. Mass. July 11, 2013) (stating that a party should not be prevented from obtaining discovery "on the same topics by other methods" and that "'When information has already been provided in other forms, a witness may still be useful to testify as to the interpretation of papers, and 'any underlying factual qualifiers of those documents'") (citations omitted).

Although it did not state so directly, Vertex may argue that it is burdensome for it to respond to Interrogatory Nos. 12 and 13 and give testimony and documents relating to Schedule A III(a) because it does not have a central source for that information. This argument fails too. Even in cases where obtaining information is difficult due to a defendant's own poor record-keeping, courts do not absolve defendant's obligation to produce discovery. *See Sanchez-Medina v. Unicco Serv. Co.*, 265 F.R.D. 24, 28 (D.P.R. 2009), *citing Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. at 61 ("Courts have been loathe to reward (and possibly encourage) poor record keeping by shielding companies with inefficient recording methods from discovery.").

This Court should order Vertex to produce full responses to Interrogatory Nos. 12 and 13, and documents/testimony for Schedule A III(a), because the company has

not made even a minimal showing that producing the information is unduly burdensome or that the requests are overbroad, and Ms. Zamd will be prejudiced if she cannot obtain the information.

ii. The comparator information Plaintiff seeks concerning other employees whom Defendant terminated for alleged performance reasons is relevant because it directly relates to Plaintiff's claims and Defendant's defenses, and Defendant has not made any factual showing that Plaintiff's requests are overbroad.

The Court should order Vertex to produce documents and testimony responsive to Schedule A I(b), which seeks comparator evidence, and in particular requests production of "[Vertex's] policies and practices regarding terminating employees for performance-related issues, including all examples where Vertex terminated an employee without issuing formal written notice…" Exhibit 2, p. 2. Vertex objects to this request based purely on it being "overly broad requiring disclosure of voluminous information which is not in proportion to the claims at issue…" Although the parties agree to the relevance, Vertex has made no showing that there is any volume of information, much less one of staggering size such that it should limit the scope to Ms. Zamd's "work group" (an undefined term that Plaintiff is not familiar with) or to the period of Ms. Zamd's employment. Ms. Zamd's sudden termination, without any performance improvement plan, written warnings, or formal counseling is suspicious, and Ms. Zamd could illustrate the pretextual nature of Vertex's justification by showing the circumstances surrounding terminations of other individuals (if any) whom Vertex fired for alleged performance issues. If no such individuals exist, or if they occurred due to

extreme reasons or following a formal performance improvement plan or reprimand, that would be highly probative of the pretextual nature of Vertex's defenses. Simply stating that there is "voluminous information" is an insufficient basis to meet Vertex's Rule 26 obligations. Therefore, because Defendant has not given any facts in support of its position, this Court should require Vertex to provide documents and testimony relating to Schedule A I(b).

iii. The parties' Confidentiality Agreement provides sufficient protection of sensitive and private information and any privacy concerns the Defendant raises do not justify its refusal to produce the requested information

Ms. Zamd understands the sensitivity involving individuals' medical information, requests for reasonable accommodations, and information contained in personnel records; however, she nonetheless requires such information in support of her own struggle to vindicate her rights as a person with a disability. One of the objections Vertex has made to producing information regarding reasonable accommodations and terminations without formal written notice, is that doing so would involve disclosure of "confidential information of individuals who are not parties to this litigation […]" "which would violate the reasonable privacy expectations of those individuals." *See* Exhibit 1, p. 22; *see also* Exhibit 2, pp. 2, 4. However, prior to exchanging any discovery, and in order to protect the parties' and third parties private information, the parties entered into a confidentiality agreement, which provides that the parties can identify certain information and documents as "Confidential" to receive heightened protection. [6]

[6] The Confidentiality Agreement is attached as Exhibit 3.

Furthermore, the Defendant's concern over the disclosure of potentially sensitive and private information of non-parties is outweighed by the Plaintiff's need for comparator information to prove her disparate treatment. *See, Waugh v. BJ's Wholesale Club, Inc.*, No. 12-12282-TSH, 2014 U.S. Dist. LEXIS 12921, (D. Mass. Feb. 3, 2014). In *Waugh*, the court granted a plaintiff's motion to compel documents similar to those Ms. Zamd is seeking—even though the defendant in that case (a large national retailer) had already produced documentation for part of the period in question. The court reasoned that the company's production was "too light" and that the plaintiff was entitled to, among other things, six years of information about all employees who took medical leave, all employees who complained of age and/or disability discrimination (nationwide), complaints defendant's employees at headquarters made to the company's CEO, and retaliation complaints (nationwide) against anyone who was involved in the plaintiff's termination. In light of the parties' confidentiality agreement, and Ms. Zamd's need to vindicate her rights as a person with a disability, this Court should order Vertex to produce the information, documents and testimony pursuant to Interrogatory No. 13 and 30(b)(6) topic II(b).

**C. This Court Should Order Defendant to Produce Documents and Testimony Relating to Its Efforts to Respond to Plaintiff's Discovery Requests, Because They Are Relevant to Ms. Zamd's Claims, And Defendant Has Not Made Even A Minimal Showing That Plaintiff's Requests Are Unduly Burdensome or Overbroad.**

In light of Vertex's unsupported allegations that there is ample documented proof of Ms. Zamd's poor performance, and that it is too burdensome to produce information

relating to individuals who sought to work from home and/or requested a reasonable accommodation, Ms. Zamd has requested documentation regarding Vertex's efforts to identify the information Ms. Zamd seeks. See, Exhibit 2, Schedule A Topics IV (a)-(c). This includes the methods Vertex used to find information, the databases Vertex searched, and the identity of the individuals who carried out the searches. Despite the relevance of these requests and their reasonableness, Vertex has not produced any such discovery and only agrees to provide testimony concerning databases the witness viewed before the 30(b)(6) deposition—not those reviewed to respond to all of Ms. Zamd's discovery requests. Thus, Vertex refuses to respond to whether or even if it searched any databases in response to Plaintiff's Interrogatories and Requests for Productions, and the identity of the individuals who looked. These issues raise concerns about Vertex's good faith compliance with its discovery obligations. Therefore, because the requests and testimony is relevant, and because Vertex did not make any factual allegations regarding the undue burden involved, Vertex fails to meet even a minimal showing required under Rule 26, and this Court should order that Vertex respond in full.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that his Court grant this motion and order Defendant to produce:

1. complete responses within 14 days to Interrogatories No 2-4, 12-13;
2. complete documentation within 14 days responsive to 30(b)(6) topics I(b) and (d), II(b), III(a), and IV (a)-(c); and

3. a witness to testify to 30(b)(6) topics I(b) and (d), II(b), III(a), and IV (a)-(c).

May 23, 2018

Irene Zamd
Plaintiff
by her attorneys,

*/s/ Beth R. Myers*

Jonathan J. Margolis, BBO # 319980
jmargolis@theemploymentlawyers.com
Beth R. Myers, BBO # 676043
beth@theemploymentlawyers.com
Powers, Jodoin, Margolis & Mantell LLP
111 Devonshire Street, Suite 400
Boston, MA 02109
(617) 742-7010

CERTIFICATE OF COMPLIANT WITH LOCAL RULE 37.1(A)

I hereby certify that counsel for the parties conferred shall confer in good faith to narrow the areas of disagreement to the greatest possible extent.

*/s/ Beth R. Myers*
Beth R. Myers

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document(s), filed through the ECF system will be served electronically upon all registered participants as identified in the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered parties this 23rd day of May 2018.

*/s/ Beth R. Myers*
Beth R. Myers