UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IRENE ZAMD,<br><br>Plaintiff,<br><br>v.<br><br>VERTEX PHARMACEUTICALS, INC.,<br><br>Defendant. | ) | Civil Action No. 1:17-cv-11219 |

**DEFENDANT VERTEX PHARMACEUTICALS, INC.'S RESPONSES TO PLAINTIFF, IRENE ZAMD'S FIRST SET OF INTERROGATORIES**

Defendant, Vertex Pharmaceuticals Incorporated ("Vertex" or Defendant"), by and through its attorneys Seyfarth Shaw LLP, submits the following responses and makes the following objections to Plaintiff's First Set of Interrogatories ("Interrogatories"). These responses are based on information reasonably available to Defendant as of the date of these responses. Defendant reserves the right to amend or supplement its responses prior to trial. By responding to any of Plaintiff's requests, Defendant does not concede to the relevance or admissibility or use of any information provided, in this or any other proceeding.

## DEFINITIONS

Defendant objects to Plaintiff's definition of the term "Defendant" or "Vertex Pharmaceuticals Incorporated" as overly broad and seeking irrelevant information that is not reasonably proportional to the needs of this case to the extent that the definition purports to include (1) "employees," a term that calls for a legal conclusion; (2) "predecessor and successors" of Defendant without any limitations regarding subject matter, geography, or

temporal scope; or (3) "all of [Defendant's] past, present and future members," "employees," "attorneys," "representatives," "agents," "assigns," also without any limitations regarding subject matter, geography, or temporal scope. Similarly, Defendant objects to the inclusion of "all of [Defendant's] affiliates, subsidiaries, parent or controlling operations and its affiliates and subsidiaries, or any entity through or on behalf of which it conducts business either alone or jointly with others" as also unreasonably overbroad and seeking immaterial information wildly disproportionate to the needs of this matter. Defendant further objects to the definition of the term "Defendant" or "Vertex Pharmaceuticals Incorporated" as calling for privileged and confidential information to the extent it purports to include "attorneys."

## INTERROGATORIES

**INTERROGATORY NO. 1**. Identify the last known residential address of each individual identified in Defendant's Initial Disclosures, subsection A.

**RESPONSE TO INTERROGATORY NO. 1**.

Defendant objects to this request as unduly broad and seeking irrelevant information not proportional to the needs of the case to the extent it seeks personal, residential information for the individuals identified in section A of the Initial Disclosures. As for those identified in numbers 2 through 6 - Robert Castellucci, Deborah Waltz, Katherine Solt, Jane Martiny, and Amanda Tramontozzi - none of these individuals is a named defendant in this matter and as such, the release of their personal, residential addresses during discovery serves no purpose. Indeed, only one of these individuals, Mr. Castellucci, is still employed by Defendant. Furthermore, Defendant has already agreed to produce these individuals and has been conferring with Plaintiff's counsel regarding the scheduling of depositions, rendering the disclosure of personal, residential information unnecessary. Defendant further objects to this interrogatory to the extent it requests the last known residential address for Plaintiff or Plaintiff's physician because such

information is more appropriately obtained through Plaintiff. Finally, Defendant objects to the request to the extent it purports to demand the residential information for individuals identified by Plaintiff (number 8 of subsection A of Defendant's Initial Disclosures) or those who have yet to be identified because discovery is ongoing (number 9 of subsection A of Defendant's Initial Disclosures).

**INTERROGATORY NO. 2**. Identify each instance that defendant communicated the performance problems alleged in Defendant's Answer to Plaintiff's Complaint, Par. 50 ("unprofessional behavior, poor communications, and interpersonal problems") to the plaintiff, stating the date and time, place, and substance of the alleged communication, the names and titles of everyone present or involved, and a full description of what was said or written by each party.

**RESPONSE TO INTERROGATORY NO. 2**.

Defendant objects to this request because the information Plaintiff seeks is available through alternative and less burdensome means, namely through deposition testimony and documents Defendant has already produced to Plaintiff. Defendant also objects to the interrogatory as unduly burdensome and unreasonable to satisfy to the extent that it seeks a narration of each and every instance Defendant communicated with Plaintiff about the persistent unprofessional behavior, poor communication, and interpersonal problems she exhibited during her nearly three year employment with Defendant, June 2010 through May 2013. The burdensome nature of this interrogatory is further exacerbated by the passage of time in this matter as the events in question occurred more than four and a half years ago or, in some instances, even longer. Further responding, Defendant objects to this request because information regarding communications with Plaintiff may be readily obtained from Plaintiff.

Subject to and without waiving these objections and lending a reasonable interpretation and scope to this request, Defendant states that Defendant communicated with and coached

Plaintiff on numerous occasions throughout her employment regarding her persistent unprofessional behavior, poor communication, and interpersonal problems. In addition to conversations during her employment, Deborah Waltz, then Director, QCM Good Clinical Practices Division, and Katherine Solt, then Associate Director, Human Resources, further planned to discuss Plaintiff's various performance problems with Plaintiff on May 23, 2013; however, Plaintiff's termination on May 22, 2013, necessitated by her highly unprofessional and disruptive behavior toward Ms. Waltz and other Vertex personnel on that same day, prevented that meeting from occurring. Notes outlining the topics to be discussed at that planned meeting may be found at documents bates labeled VTX_ZAMD_00000876-877.

Pursuant to Fed. R. Civ. P. 33(b)(d) and Local Rule 33.1(b), Defendant further answers this interrogatory by referring Plaintiff to documents bates numbered: VTX_ZAMD_0000061-169, 311-314, 319-329, 333-343, 381, 384, 387-389, 392, 395-400, 403-406, 414-418, 423, 425-427, 430-439, 600-602, 634-636, 663-671, 687, 693-696, 704-705, 708-720, 792-802, 848-861, 869, 876-877, 881, 1187-1188, 1276-1277, 1291-1293, 1303-1315, and 1650-1834.

Defendant states that these documents include responsive email communications, contemporaneous notes, and written summaries describing, regarding, and/or concerning meetings or communications between Plaintiff and Defendant employees about Plaintiff's various performance deficiencies. Defendant further avers that given the passage of time since Plaintiff's termination on May 22, 2013, the Plaintiff's burden of deriving or ascertaining the information sought by this interrogatory from these identified documents is substantially the same as for Defendant. Further, Defendant states that it provided Plaintiff all of the foregoing documents on December 5, 2017. Defendant reserves the right to supplement this interrogatory should additional information become available during discovery.

**<u>INTERROGATORY NO. 3</u>**. Identify any alleged performance deficiencies of the plaintiff other than those stated in Paragraph 50 of Defendant's Answer.

**<u>RESPONSE TO INTERROGATORY NO. 3</u>**.

Defendant objects to this request as vague and ambiguous to the extent it relies upon the undefined term "performance deficiencies." Defendant also objects to this request because the information Plaintiff seeks is available through alternative and less burdensome means, namely through deposition testimony and documents Defendant has already produced to Plaintiff. Defendant also objects to the interrogatory as unduly burdensome and unreasonable to satisfy to the extent that it seeks identification of any "alleged performance deficiencies," other than those identified in the response to Interrogatory No. 2, that Plaintiff exhibited during her nearly three year employment with Defendant, June 2010 through May 2013. The burdensome nature of this interrogatory is further exacerbated by the passage of time in this matter as the events in question occurred more than four and a half years ago or, in some instances, even longer.

Subject to and without waiving these objections and lending a reasonable interpretation and scope to this request, Defendant states that at the time of Plaintiff's termination on May 22, 2013, in addition to the unprofessional behavior, poor communication, and interpersonal problems that prompted Plaintiff's termination, Plaintiff had also demonstrated other performance deficiencies, including but not limited to taking inordinate amounts of time to perform job tasks and functions, which even when such tasks were completed, contained errors, failing to follow manager directives, and frequent, unexpected unavailability during regular working hours (both in the office and at home).

Pursuant to Fed. R. Civ. P. 33(b)(d) and Local Rule 33.1(b), Defendant further answers this interrogatory by referring Plaintiff to documents bates numbered: VTX_ZAMD_000001-49, 60-169, 266-281, 289-291, 293-308, 311-329, 331-345, 348-367, 381, 384, 387-389, 390, 392,

395-399, 403-406, 411-412, 414-418, 425-441, 581-604, 631-673, 676-683, 688-701, 704-723, 792-802, 844-846, 848-861, 876-880, 882-887, 890, 896, 898-952, 954-969, 975-976, 982-984, 994-1033, 1036-1257, 1263-1273, 1276-1288, 1291-1293, 1297, 1303-1308, 1316-1327, 1421, 1424-1429, 1465-1468, 1495, 1505-1508, 1514, 1578-1597, 1599, 1630-1631, 1643, and 1650-1834.

Defendant states that these documents include responsive email communications, contemporaneous notes, and written summaries that describe, demonstrate, and/or concern Plaintiff's performance problems during her employment with Defendant. Defendant further avers that given the passage of time since Plaintiff's termination on May 22, 2013, the Plaintiff's burden of deriving or ascertaining the information sought by this interrogatory from these identified documents is substantially the same as for Defendant. Further, Defendant states that it provided Plaintiff all of the foregoing documents on December 5, 2017. Defendant reserves the right to supplement this interrogatory should additional information become available during discovery.

**INTERROGATORY NO. 4**. Identify all communications to the plaintiff concerning alleged performance deficiencies other than those set forth in the response to Interrogatory No. 2, above, stating the date and time, place, and substance of the asserted communication, the names and titles of everyone present or involved, and a full description of what was said and/or written by each party.

**RESPONSE TO INTERROGATORY NO. 4**.

Defendant objects to this interrogatory as vague and ambiguous to the extent it relies upon the undefined term "performance deficiencies." Defendant also objects to this request because the information Plaintiff seeks is available through alternative and less burdensome means, namely through deposition testimony and documents Defendant has already produced to Plaintiff. Defendant further objects to the interrogatory as unduly burdensome and unreasonable

to satisfy to the extent that it seeks a narration of each and every instance Defendant communicated with Plaintiff about the performance problems she exhibited during her nearly three year employment with Defendant, June 2010 through May 2013. The burdensome nature of this interrogatory is further exacerbated by the passage of time in this matter as the events in question occurred more than four and a half years ago or, in some instances, even longer. Further responding, Defendant objects to this request because information regarding communications with Plaintiff may be readily obtained from Plaintiff.

Subject to and without waiving these objections and lending a reasonable interpretation and scope to this request, Defendant states generally that Defendant communicated with Plaintiff on numerous occasions throughout her employment regarding the performance problems identified in the response to Interrogatories No. 2 and 3. In addition to conversations during her employment, Ms. Waltz and Ms. Solt further planned to discuss Plaintiff's various performance problems with Plaintiff on May 23, 2013; however, Plaintiff's termination on May 22, 2013, necessitated by her highly unprofessional and disruptive behavior toward Ms. Waltz and other Vertex personnel on that same day, prevented that meeting from occurring. Notes outlining the topics to be discussed at that planned meeting may be found at documents bates labeled VTX_ZAMD_00000876-877.

Further responding and pursuant to Fed. R. Civ. P. 33(b)(d) and Local Rule 33.1(b), Defendant answers this interrogatory by referring Plaintiff to documents bates numbered: VTX_ZAMD_0000061-169, 311-314, 319-329, 333-343, 381, 384, 387-389, 392, 395-400, 403-406, 414-418, 423, 425-427, 430-439, 600-602, 634-636, 663-671, 687, 693-696, 704-705, 708-720, 792-802, 848-861, 869, 876-877, 881, 1187-1188, 1276-1277, 1291-1293, 1303-1315, and 1650-1834. Defendant states that these documents include responsive email communications,

contemporaneous notes, and written summaries describing, regarding, and/or concerning meetings or conversations between Plaintiff and Defendant employees about her various performance deficiencies during her employment with Defendant. Defendant further avers that given the passage of time since Plaintiff's termination from Defendant on May 22, 2013, Plaintiff's burden of deriving or ascertaining the information sought by this interrogatory from these identified documents is substantially the same as for Defendant. Further, Defendant states that it has already provided Plaintiff all of the foregoing documents on December 5, 2017. Defendant reserves the right to supplement this interrogatory response should additional information become available during discovery.

**INTERROGATORY NO. 5**. Identify all documents concerning the alleged performance deficiencies set forth in your responses to Interrogatories Nos. 2 and 4.

**RESPONSE TO INTERROGATORY NO. 5**.

Defendant objects to this interrogatory to the extent it purports to demand the production of documents. Defendant further objects to this interrogatory to the extent it requests the identification of documents protected by the attorney client privilege or work product doctrine.

Subject to and without waiving this objection, Defendant refers to the documents identified in response to Interrogatory No. 3, but also those documents Defendant produced on December 5, 2017 in response to Requests 10, 11, 15, and 19 of Plaintiff's First Set of Production of Documents.

**INTERROGATORY NO. 6**. Identify the date and time of each and every meeting that was scheduled to take place to discuss the plaintiff's medical condition, request for accommodation, and/or performance of her work duties, whether the meeting actually took place or not, between Plaintiff and any of the individual identified Defendant's Initial Disclosures, subsection A. Your answer should identify any and all Outlook calendars referenced or reviewed.

**RESPONSE TO INTERROGATORY NO. 6.**

Defendant objects to this information to the extent it calls for information protected by the attorney-client privilege and/or work product doctrine. Further responding, Defendant objects to this interrogatory as vague and ambiguous to the extent it relies upon the undefined term "scheduled." For example, Defendant is unable to ascertain whether Plaintiff's seeks information regarding only meetings for which an Outlook calendar invitation was created, or whether this interrogatory seeks information on meetings established by simple verbal agreement or those that occurred with no prior planning whatsoever. Similarly, Defendant objects to this request because the information Plaintiff seeks is available through alternative and less burdensome means, namely through deposition testimony and documents Defendant has already produced to Plaintiff. Further responding, Defendant objects to this request because information regarding meetings with Plaintiff may be readily obtained from Plaintiff.

But even lending a reasonable interpretation and scope to this interrogatory, Defendant also objects to the interrogatory as unduly burdensome and unreasonable to satisfy to the extent that it seeks identification of each and every "meeting" between Defendant and Plaintiff about her "medical condition, request for accommodation, and/or performance of her work duties" during the entirety of her nearly three year employment with Defendant, June 2010 through May 2013. The burdensome nature of this interrogatory is further exacerbated by the broad substantive scope of the topics identified in this interrogatory and the fact that events in question occurred more than four and a half years ago (or, in some instances, even longer). Finally, Defendant objects to this interrogatory as duplicative of Interrogatories 2 and 4 to the extent that calls for information regarding meetings about "performance of [Plaintiff's] work" and

duplicative of Interrogatory 7 to the extent it request information regarding meetings regarding Plaintiff's medical condition and/or request for accommodation of her putative disability.

Subject to and without waiving these objections and pursuant to Fed. R. Civ. P. 33(b)(d) and Local Rule 33.1(b), Defendant answers this interrogatory by referring Plaintiff to documents identified in response to Interrogatories No. 2 and 4, as well as documents bates numbered: 0000059-67, 259-261, 292, 309-312, 330, 333-345, 368-383, 385-386, 390, 392, 395-400, 403-406, 424-427, 430-439, 466-484, 485-498, 499-580, 581-586, 605-606, 631-632, 634-636, 672-675, 693-696, 702-703, 706-707, 791, 804-834, 838-846, 848-74, 886-887, 892-895, 897, 970, 977-78, 992-993, 1276, 1296, 1333, 1346, 1408-1411, 1421, 1445-1447, and 1650-1834. Defendant states that these documents include responsive email communications, contemporaneous notes, calendar invites, and written summaries describing, regarding, and/or concerning meetings or conversations between Plaintiff and Defendant employees about her medical condition, requests for accommodations during her employment with Defendant, and the performance of her work. Defendant further avers that given the passage of time since Plaintiff's termination from Defendant on May 22, 2013, the Plaintiff's burden of deriving or ascertaining the information sought in by this interrogatory from these identified documents is substantially the same as for Defendant. Further, Defendant states that it has already provided Plaintiff all of the foregoing documents on December 5, 2017. Defendant reserves the right to supplement this interrogatory should additional information become available during discovery.

**<u>INTERROGATORY NO. 7</u>**. Identify each and every meeting, consultation and/or interview with the plaintiff that the defendant's human resources representative(s) conducted regarding her reasonable accommodation request, stating the date and time, place, and substance of the asserted communication, the names and titles of everyone present or involved, and a full description of what was said and/or written by each party.

**RESPONSE TO INTERROGATORY NO. 7.**

Defendant objects to this request because the information Plaintiff seeks is available through alternative and less burdensome means, namely through deposition testimony and documents Defendant has already produced to Plaintiff. Defendant also objects to the interrogatory as unduly burdensome and unreasonable to satisfy to the extent that it seeks a narration of each and every meeting between Defendant's Human Resources Business Partners and Plaintiff about her multiple requests for accommodation during Plaintiff's nearly three year employment with Defendant, June 2010 through May 2013. The burdensome nature of this interrogatory is further exacerbated by that fact that the passage of time in this matter as concerns the events in question occurred more than four and a half years ago (or, in some instances, even longer). Further responding, Defendant objects to this request because information regarding communications with Plaintiff may be readily obtained from Plaintiff. Finally, Defendant objects to this interrogatory as duplicative of Interrogatory No. 6.

Subject to and without waiving these objections and pursuant to Fed. R. Civ. P. 33(b)(d) and Local Rule 33.1(b), Defendant further answers this interrogatory by referring Plaintiff to documents bates numbered: 0000059-67, 259-261, 292, 309-312, 330, 333-345, 368-383, 385-386, 390, 392, 395-400, 403-406, 424-427, 430-439, 466-484, 485-498, 499-580, 581-586, 605-606, 631-632, 634-636, 672-675, 693-696, 702-703, 706-707, 791, 804-834, 838-846, 848-74, 886-887, 892-895, 897, 970, 977-78, 992-993, 1276, 1296, 1333, 1346, 1408-1411, 1421, 1445-1447, and 1650-1834.

Defendant states that these documents include responsive email communications, contemporaneous notes and written summaries describing, regarding, and/or concerning meetings or conversations between Plaintiff and Defendant employees about her requests for

accommodations during her employment with Defendant. Defendant further avers that given the passage of time since Plaintiff's termination from Defendant on May 22, 2013, the Plaintiff's burden of deriving or ascertaining the information sought in by this interrogatory from these identified documents is substantially the same as for Defendant. Further, Defendant states that it has already provided Plaintiff all of the foregoing documents on December 5, 2017. Defendant reserves the right to supplement this interrogatory should additional information become available during discovery.

**INTERROGATORY NO. 8**. Identify Margo Holland's employment status with the defendant from January 1, 2012 to the present. Your answer should include dates of employment, titles, names of supervisor(s), work duties and responsibilities, and whether the defendant asserts that Ms. Holland was an independent contractor or employee of the defendant during each period(s).

**RESPONSE TO INTERROGATORY NO. 8**.

Defendant objects to this interrogatory to the extent it purports to request information as to whether Margo Holland was an employee or an independent contractor, which calls for a legal conclusion. Defendant also objects to this interrogatory as overly broad in temporal scope, unduly burdensome, harassing, and seeking immaterial information not reasonably proportional to the needs of this case to the extent that it seeks information regarding the work arrangement of Margo Holland, who is in no way similarly situated to Plaintiff. Indeed, at the time of Plaintiff's termination, Ms. Holland was an employee of Vertex (Canada) Pharmaceuticals Incorporated and was on loan to Vertex Pharmaceuticals Incorporated as part of a two year international assignment. Ms. Holland's ability to work on-site in the United States, while employed by Vertex (Canada) Pharmaceuticals Incorporated, was limited by restrictions placed on her husband's pension, which required Ms. Holland to maintain Canadian residency. Moreover, at the time of Plaintiff's termination, Ms. Holland occupied the position of Quality Manager, a position different than that of Plaintiff, who was a Quality Lead. Defendant also objects to this

request because it calls for confidential information relating to Ms. Holland, who is not a party to this litigation, disclosure of which would violate the reasonable privacy expectations of Ms. Holland. Further responding, Defendant objects to this interrogatory to the extent it asks for information regarding Ms. Holland's work duties and responsibilities. Such information would be more appropriately obtained directly from Ms. Holland, who is no longer employed by either Defendant or Vertex (Canada) Pharmaceuticals Incorporated.

Furthermore, even if Ms. Holland occupied a comparable position to Plaintiff, which she did not, the fact that she was permitted to perform work for Defendant from Canada for reasons unrelated to a medical condition is utterly irrelevant to Plaintiff's claims. By Plaintiff's own admission, Defendant ultimately permitted Plaintiff to work from home three days a week. That Plaintiff was expected to participate, in good faith, in Defendant's reasonable accommodation process to determine the contours of the work from home arrangement is just common sense. Indeed, Plaintiff's request to work from home stemmed from her disclosure to Defendant that she allegedly suffered from a hypersensitivity to chemicals, which was apparently exacerbated by spending time in environments she could not control. Given that Plaintiff's essential job functions required <u>both</u> in-person team collaboration in Defendant's Boston office <u>and</u> travel to audit sites, Defendant was obligated to gather further medical information to determine how Plaintiff's medical condition affected her job functions and what specific accommodations would most effectively permit her to safely perform the essential functions of her position. Accordingly, information as to Ms. Holland's work arrangement with Defendant and the specifics of the location of that work is absolutely immaterial to this matter.

Subject to and without waiving these objections, and lending a reasonable interpretation and scope to this interrogatory, Defendant provides the following information regarding Ms.

Holland's relationship with Defendant and Vertex (Canada) Pharmaceuticals Incorporated ("Vertex (Canada)").

- **July 3, 2012 through February 2013** - Ms. Holland, a Canadian citizen and resident, worked with Robert Castelluci, Vice President for Quality Assurance for Defendant, as a contractor, assisting with projects for the Quality Compliance Management ("QCM") Division.

- **February 4, 2013 through June 7, 2013** - Vertex (Canada), a legal entity separate from Defendant, hired Ms. Holland as a Quality Manager. Vertex (Canada) placed Ms. Holland on a two year international assignment (February 4, 2013 - February 5, 2015), loaning her to Defendant's QCM Good Clinical Practice Group. Under the "loan" arrangement, Ms. Holland was an employee of Vertex (Canada), but reported to Deborah Waltz, then Senior Director of Defendant's QCM Good Clinical Practice Division. Ms. Holland was granted cross-border commuter status, permitting her to retain residence in Canada and work on-location in the United States for two weeks out of each month.

- **June 10, 2013 through May 12, 2014** - Ms. Holland, still an employee of Vertex (Canada) on international assignment to Defendant, was promoted to Associate Director of QCM Good Clinical Practice Group. In this role she continued to report to Deborah Waltz and retained cross-border commuter status.

- **May 12, 2014 - February 23, 2015** - Ms. Holland, still an employee of Vertex (Canada) on international assignment to Defendant, was promoted to Director of QCM Good Clinical Practice Group and began reporting to Robert Castellucci, Vice President for Quality Assurance for Defendant. In this role, Ms. Holland retained cross-border commuter status.

- **February 23, 2015 - January 13, 2017** - At the expiration of her international assignment, Ms. Holland left the employ of Vertex (Canada). Defendant hired Ms. Holland as Director of QCM Good Clinical Practices, during which time she continued reporting to Mr. Castellucci. Ms. Holland began living in the United States during the period of this employment with Defendant. Ms. Holland voluntary resigned her employment with Defendant on or around January 13, 2017.

The foregoing information is provided to the best of Defendant's knowledge and information. Defendant reserves the right to supplement and/or amend this response should additional information become available through discovery.

**INTERROGATORY NO. 9**. Identify Margo Holland's employment status with Vertex Canada from January 1, 2012 to the present. Your answer should include dates of employment, titles, name of supervisor(s), work duties and responsibilities, and whether the defendant asserts that Ms. Holland was an independent contractor or employee of Vertex Canada during each period(s).

**RESPONSE TO INTERROGATORY NO. 9**.

Defendant objects to this interrogatory to the extent it purports to request information as to whether Margo Holland was an employee or an independent contractor, which calls for a legal conclusion. Defendant also objects to this interrogatory as overly broad in temporal scope, unduly burdensome, harassing, and seeking immaterial information not reasonably proportional to the needs of this case to the extent that it seeks information regarding the work arrangement of Margot Holland, who is in no way similarly situated to Plaintiff. Indeed, at the time of Plaintiff's termination, Ms. Holland was an employee of Vertex (Canada) Pharmaceuticals and was on loan to Vertex Pharmaceuticals Incorporated as part of a two year international assignment. Ms. Holland's ability to work on-site in the United States, while employed by Vertex(Canada), was limited by restrictions placed on her husband's pension, which required Ms. Holland to maintain Canadian residency. Moreover, at the time of Plaintiff's termination, Ms. Holland occupied the position of Quality Manager, a position different than that of Plaintiff, who was a Quality Lead. Defendant also objects to this request because it calls for confidential information related Ms. Holland, who is not a party to this litigation, disclosure of which would violate the reasonable privacy expectations of Ms. Holland. Further responding, Defendant objects to this interrogatory to the extent it asks for information regarding Ms. Holland's works duties and responsibilities. Such information would be more appropriately obtained directly from Ms. Holland, who is no longer employed by either Defendant or Vertex (Canada) Pharmaceuticals Incorporated.

Furthermore, even if Ms. Holland occupied a comparable position to Plaintiff, which she did not, the fact that she was permitted to perform work for Defendant from Canada for reasons unrelated to a medical condition is utterly irrelevant to Plaintiff's claims. By Plaintiff's own admission, Defendant ultimately permitted Plaintiff to work from home three days a week. That

Plaintiff was expected to participate, in good faith, in Defendant's reasonable accommodation process to determine the contours of the work from home arrangement is just common sense. Indeed, Plaintiff's request to work from home stemmed from her disclosure to Defendant that she allegedly suffered from a hypersensitivity to chemicals, which was apparently exacerbated by spending time in environments she could not control. Given that Plaintiff's essential job functions required both in-person team collaboration in Defendant's Boston office and travel to audit sites, Defendant was obligated to gather further medical information to determine how Plaintiff's medical condition affected her job functions and what specific accommodations would most effectively permit her to safely perform the essential functions of her position. Accordingly, information as to Ms. Holland's work arrangement with Defendant and the specifics of the location of that work is absolutely immaterial to this matter.

Subject to and without waiving these objections, Defendant refers to its answer to Interrogatory 9, which details Ms. Holland's status with respect to both Defendant and Vertex (Canada) Pharmaceuticals Incorporated and is equally responsive to this interrogatory.

**INTERROGATORY NO. 10**. State whether the defendant permitted Margo Holland to work remotely from her home. Your answer should include the name and title of the decision maker(s) who made the decision to permit her to work from home, the date(s) of the decision, the period during which she was permitted to work from home, how many days/weeks each month Ms. Holland was permitted to work from home, and how many days/weeks each month Ms. Holland actually worked from home.

**RESPONSE TO INTERROGATORY NO. 10**.

Defendant objects to this interrogatory to the extent it purports to request information as to whether Margo Holland was an employee or an independent contractor, which calls for a legal conclusion. Defendant also objects to this interrogatory as overly broad in temporal scope, unduly burdensome, harassing, and seeking immaterial information not reasonably proportional

to the needs of this case to the extent that it seeks information regarding the work arrangement of Margo Holland, who is in no way similarly situated to Plaintiff. Indeed, at the time of Plaintiff's termination, Ms. Holland was an employee of Vertex (Canada) Pharmaceuticals and was on loan to Vertex Pharmaceuticals Incorporated as part of a two year international assignment. Ms. Holland's ability to work on-site in the United States, while employed by Vertex (Canada), was limited by restrictions placed on her husband's pension, which required Ms. Holland to maintain Canadian residency. Moreover, at the time of Plaintiff's termination, Ms. Holland occupied the position of Quality Manager, a position different than that of Plaintiff, who was a Quality Lead. Defendant also objects to this request because it calls for confidential information related Ms. Holland, who is not a party to this litigation, disclosure of which would violate the reasonable privacy expectations of Ms. Holland. Further responding, Defendant objects to this interrogatory to the extent it asks for information regarding Ms. Holland's works duties and responsibilities. Such information would be more appropriately obtained directly from Ms. Holland, who is no longer employed by either Defendant or Vertex (Canada) Pharmaceuticals Incorporated.

Furthermore, even if Ms. Holland occupied a comparable position to Plaintiff, which she did not, the fact that she was permitted to perform work for Defendant from Canada for reasons unrelated to a medical condition is utterly irrelevant to Plaintiff's claims. By Plaintiff's own admission, Defendant ultimately permitted Plaintiff to work from home three days a week. That Plaintiff was expected to participate, in good faith, in Defendant's reasonable accommodation process to determine the contours of the work from home arrangement is just common sense. Indeed, Plaintiff's request to work from home stemmed from her disclosure to Defendant that she allegedly suffered from a hypersensitivity to chemicals, which was apparently exacerbated by spending time in environments she could not control. Given that Plaintiff's essential job

functions required <u>both</u> in-person team collaboration in Defendant's Boston office <u>and</u> travel to audit sites, Defendant was obligated to gather further medical information to determine how Plaintiff's medical condition affected her job functions and what specific accommodations would most effectively permit her to safely perform the essential functions of her position. Accordingly, information as to Ms. Holland's work arrangement with Defendant and the specifics of the location of that work is absolutely immaterial to this matter.

Subject to and without waiving these objections, and lending a reasonable interpretation and scope to this interrogatory, Defendant states that the conditions of the agreement with Vertex (Canada) Pharmaceuticals Incorporated to loan Ms. Holland to Defendant for a two year international assignment, stipulated that Ms. Holland would work for two weeks out of every month in the United States and would otherwise work from a location in her resident country of Canada or wherever else her duties required her to travel.

**<u>INTERROGATORY NO. 11</u>**. State whether the decision to permit Margo Holland to work remotely from her home was the result of her having a disability, as that term is defined by 42 U.S.C.S. § 12102(1), and/or having made a request for reasonable accommodation.

**<u>RESPONSE TO INTERROGATORY NO. 11</u>**.

Defendant objects to this interrogatory to the extent it purports to request information as to whether Margo Holland was an employee or an independent contractor, which calls for a legal conclusion. Defendant also objects to this interrogatory as overly broad in temporal scope, unduly burdensome, harassing, and seeking immaterial information not reasonably proportional to the needs of this case to the extent that it seeks information regarding the work arrangement of Margot Holland, who is in no way similarly situated to Plaintiff. Indeed, at the time of Plaintiff's termination, Ms. Holland was an employee of Vertex (Canada) Pharmaceuticals and was on loan to Vertex Pharmaceuticals Incorporated as part of a two year international assignment. Ms.

Holland's ability to work on-site in the United States, while employed by Vertex(Canada), was limited by restrictions placed on her husband's pension, which required Ms. Holland to maintain Canadian residency. Moreover, at the time of Plaintiff's termination, Ms. Holland occupied the position of Quality Manager, a position different than that of Plaintiff, who was a Quality Lead. Defendant also objects to this request because it calls for confidential information related Ms. Holland, who is not a party to this litigation, disclosure of which would violate the reasonable privacy expectations of Ms. Holland. Further responding, Defendant objects to this interrogatory to the extent it asks for information regarding Ms. Holland's works duties and responsibilities. Such information would be more appropriately obtained directly from Ms. Holland, who is no longer employed by either Defendant or Vertex (Canada) Pharmaceuticals Incorporated.

Furthermore, even if Ms. Holland occupied a comparable position to Plaintiff, which she did not, the fact that she was permitted to perform work for Defendant from Canada for reasons unrelated to a medical condition is utterly irrelevant to Plaintiff's claims. By Plaintiff's own admission, Defendant ultimately permitted Plaintiff to work from home three days a week. That Plaintiff was expected to participate, in good faith, in Defendant's reasonable accommodation process to determine the contours of the work from home arrangement is just common sense. Indeed, Plaintiff's request to work from home stemmed from her disclosure to Defendant that she allegedly suffered from a hypersensitivity to chemicals, which was apparently exacerbated by spending time in environments she could not control. Given that Plaintiff's essential job functions required both in-person team collaboration in Defendant's Boston office and travel to audit sites, Defendant was obligated to gather further medical information to determine how Plaintiff's medical condition affected her job functions and what specific accommodations would most effectively permit her to safely perform the essential functions of her position.

Accordingly, information as to Ms. Holland's work arrangement with Defendant and the specifics of the location of that work is absolutely immaterial to this matter.

Subject to and without waiving these objections, Defendant states that, as stated in Defendant's answer to Interrogatory No. 10, the conditions of the agreement between Defendant and Vertex (Canada) Pharmaceuticals Incorporated to loan Ms. Holland to Defendant for a two year international assignment dictated the terms and conditions of Ms. Holland's work location.

**INTERROGATORY NO. 12**. Identify each and every employee (other than the plaintiff and Margo Holland) in the defendant's Quality Compliance Management ("QCM") Good Clinical Practice division who was permitted to work remotely from his/her home from January 1, 2010 to the present. Your answer should include the name and title of the decision maker(s) who made the decision to permit the individual to work from home, the date(s) of the decision, the period during which each individual was permitted to work from home, how many days/weeks each month each individual was permitted to work from home, and how many days/weeks each month each individual actually worked from home.

**RESPONSE TO INTERROGATORY NO. 12**.

Defendant objects to this request as overly broad in temporal scope, unduly burdensome, and seeking information wildly disproportionate to the needs of the case to the extent that it seeks information regarding any employee in the QCM Good Clinical Practice Division who was permitted to work from home outside the timeframe during which Plaintiff reported to Deborah Waltz, from on or around August 2012 through May 22, 2013. Indeed, this interrogatory demands such information for a period spanning eight (8) years (January 1, 2010 through the present). Further, Defendant objects this interrogatory's request for the identification of each and every employee of the QCM Good Clinical Practice Division "who was permitted to work remotely from his/her home" as vague and ambiguous. As phrased, Plaintiff's request appears to demand identification of any single instance over an eight year period when an employee may

have worked from home on any occasion. The ambiguity of this interrogatory makes it impossible for Defendant to provide a reasonable response.

Furthermore, Defendant objects to this interrogatory, as phrased, because the potential substantive breadth of information sought is overly broad, unduly burdensome, and seeking immaterial information that is not reasonably proportionate to the needs of this case. Whether other employees in the QCM Good Clinical Practice Division were ever permitted to work from home on any occasion for any reason is entirely irrelevant to this case because, by Plaintiff's own admission, Defendant ultimately permitted Plaintiff to work from home three days a week. Defendant also objects to this interrogatory to the extent it seeks disclosure of information protected by the attorney client privilege or work product doctrine. Finally, Defendant objects to this request because it calls for confidential information of individuals who are not parties to this litigation, disclosure of which would violate the reasonable privacy expectations of those individuals.

If Plaintiff interposes interrogatory that is a reasonably tailored in both temporal and substantive scope, Defendant will respond and/or object in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

**INTERROGATORY NO. 13**. For the individuals identified in response to Interrogatory No. 12, identify whether the decision to permit him/her to work remotely from home was the result of him/her having a disability, as that term is defined by 42 U.S.C.S. § 12102(1), and/or having made request for reasonable accommodation.

**RESPONSE TO INTERROGATORY NO. 13**.

Defendant objects to this request as overly broad in temporal scope, unduly burdensome, and seeking information wildly disproportionate to the needs of the case to the extent that it seeks information regarding any employee in the QCM Good Clinical Practice Division who was

permitted to work from home outside the timeframe during which Plaintiff reported to Deborah Waltz, from on or around August 2012 through May 22, 2013. Indeed, this interrogatory, by reference to Interrogatory No. 12, demands such information for a period spanning eight (8) years (January 1, 2010 through the present). Further, Defendant objects this interrogatory's request for the identification of each and every employee of the QCM Good Clinical Practice Division "who was permitted to work remotely from his/her home" as vague and ambiguous. As phrased, Plaintiff's request appears to demand identification of any single instance over an eight year period when an employee may have worked from home on any occasion. The ambiguity of this interrogatory makes it impossible for Defendant to provide a reasonable response.

Furthermore, Defendant objects to this interrogatory, as phrased, because the potential substantive breadth of information sought is overly broad, unduly burdensome, and seeking immaterial information that is not reasonably proportionate to the needs of this case. Whether other employees in the QCM Good Clinical Practice Division were ever permitted to work from home on any occasion for any reason is entirely irrelevant to this case because, by Plaintiff's own admission, Defendant ultimately permitted Plaintiff to work from home three days a week. Defendant also objects to this interrogatory to the extent it seeks disclosure of information protected by the attorney client privilege or work product doctrine. Finally, Defendant objects to this request because it calls for confidential information of individuals who are not parties to this litigation, disclosure of which would violate the reasonable privacy expectations of those individuals.

If Plaintiff interposes interrogatory that is a reasonably tailored in both temporal and substantive scope, Defendant will respond and/or object in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

**DATED: January 5, 2018**

Respectfully submitted,

By Its Attorneys,

Lynn A. Kappelman (BBO# 642017)
lkappelman@seyfarth.com
Bridget M. Maricich (BBO# 670844)
bmaricich@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

## VERIFICATION

I, Stephen Schiavo, have read the foregoing answers to Plaintiff's Interrogatories. The information in these responses has been obtained from Defendant Vertex Pharmaceuticals Incorporated's employees, and others whom I believe reliable and capable of ascertaining the facts stated herein. As to those matters set forth in the answers about which I have personal knowledge, I believe these answers to be true; as to those matters on which I have no personal knowledge, I believe these answers to be true; as to those matters on which I have no personal knowledge and am relying on those who have prepared those answers, I have no reason to believe those answers are not true.

Signed under the pains and penalties of perjury this 5th day of January, 2018.

Stephen Schiavo, Vice President, Human Resources

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January, 2018, a copy of the foregoing document was served on Plaintiff's counsel of record by mailing a copy, first class mail, to:

Beth R. Myers, Esq.
Jonathan J. Margolis, Esq.
Powers, Jodoin, Margolis & Mantell LLP
111 Devonshire Street, Suite 400
Boston, MA 02109

Bridget M. Maricich